**In the Matter of L. R. S.**

**No. 17213.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 16, 1978.

Patricia L. Altman, Rosenberg, for appellant.

Fred Felcman, Asst. Dist. Atty., Richmond, for appellee.

PEDEN, Justice.

L.R.S. appeals from an adjudication by the Juvenile Court of Fort Bend County declaring him to be a child who has engaged in delinquent conduct within the meaning of Section 51.03, Texas Family Code, and placing him in custody of the probation officer. Trial by jury was waived. No findings of fact or conclusions of law have been made. No exhibits have been brought forward. Absent the appellant's written and oral confessions and the fruit of his oral confession, the evidence would not support the trial court's judgment.

In early September of 1977, a school in Fort Bend County was burglarized. Rosenberg Police Officer Ted Waite, acting on information he had received, went to Lamar Junior High School in Rosenberg on September 21 to interview L.R.S. at the office of the principal, Mr. Winn. L.R.S., a student there, arrived at the principal's office at 10:40. Officer Waite explained why he was there, read L.R.S. his rights, and interviewed him in Mr. Winn's office. Mr. Winn was the only other person present. The officer says that L.R.S., then 13, was not then under arrest and was so advised. After interviewing L.R.S. for several minutes, Officer Waite explained to him that he was being taken to the Rosenberg Police Department where he would be detained. Mr. Winn told one of L.R.S.'s parents at 10:49 a. m. where he was being taken. The Rosenberg Police Department is not a designated detention facility for juveniles in Fort Bend County; the Fort Bend County jail in Richmond is. Officer Waite testified that the appellant was moved to the police station for further questioning. He said the proce-

dure was routine because the juveniles have to be processed, reports have to be completed before the authorities can detain them, and the juvenile officer has to be notified. Officer Waite testified that he read L.R.S. his rights and turned the investigation over to the detective on duty, Paul McClellan. Detective McClellan testified that Officer Waite asked L.R.S. if he understood each of the rights.

Detective McClellan and Officer Waite then began questioning L.R.S., with no one else in the room. L.R.S. was asked if he had anything to do with the burglary, and as soon as he admitted having participated in it, Juvenile Officer Mary Phillips was called. This was at 11:36 a. m., some 23 minutes after their arrival at the police station. Detective McClellan testified that Officer Phillips was present in the room when the questioning was resumed. She said she was not present but that L.R.S.'s mother was there. It is unclear as to whether "there" means the police station in general or the room in which the questioning was conducted. In response to questioning, the appellant explained to them in detail how the burglary was committed. One of the stolen items was a radio that L.R.S. had given to another boy. Officer Phillips collected the radio from the home of the other boy, returned to the station, then went to her office.

After L.R.S. made his incriminating oral statement, Officer Waite took him to a magistrate, Justice of the Peace M. J. Geick, "to get him his magistrate warning and to get him qualified." At Judge Geick's office, L.R.S. and the Judge were secured alone, and L.R.S. was told his rights. L.R.S. was then returned to the police station, his written statement was taken, and he was subsequently returned to the magistrate's office. There, at approximately 1:50 p. m., after the magistrate had satisfied himself that L.R.S. was competent to make a confession, L.R.S. signed the written statement that had been taken at the Rosenberg Police Station.

■ L.R.S. complains in his first point of error of the admission into evidence of his extrajudicial oral statement and the fruit of it because those holding him in custody when the statement was made failed to comply with the provisions of Section 52.-02(a), Title 3, of the Texas Family Code. In Title 3, the legislature has detailed explicit statutory procedures for the arrest, trial, and disposition of juveniles accused of delinquent conduct. Section 52.02(a) of the Code, entitled "Release or Delivery to Court", provides in pertinent part:

(a) A person taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:

(1) release the child to his parent, guardian, custodian, or other responsible adult upon that person's promise to bring the child before the juvenile court when requested by the court;

(2) bring the child before the office or official designated by the juvenile court;

(3) bring the child to a detention facility designated by the juvenile court;

\* \* \* \* \* \*

As has been noted, after L.R.S. was taken into custody, he was transported to the Rosenberg Police Station, and it is not a "detention facility designated by the juvenile court". Thus it is clear that he was taken "elsewhere" before he was delivered to the designated detention facility.

Officer Waite admitted that the Fort Bend County Jail is the designated detention facility. Juvenile Officer Phillips stated that she was not authorized to release L.R.S to his parents while he was being detained at the Rosenberg Police Station but that she could have him released from the Fort Bend County Jail.

The State maintains that L.R.S. was taken to the Rosenberg Police Station to facilitate the completion of necessary paper work. To support its position, the State relies on this law review commentary on Section 52.02(a):

Subsection (a) requires the law enforcement officer taking a child into custody immediately to dispose of the child's case

in one of five authorized ways. It prohibits the detention of the child for purposes other than to make the decision of what to do with him. *To the extent authorized by the juvenile court under paragraph (2)*, law-enforcement officers taking a child into custody may take him to the police station to do the paper work on the case. Dawson, "Commentary on Title 3, Texas Family Code Symposium" 5 Texas Tech L.R. 509, 541 (1974). (emphasis supplied)

Some authorities have, in keeping with Section 52.02, secured a juvenile court order designating police headquarters as an appropriate place for taking a juvenile after arrest. See Steele, "Criminal Law and Procedure", 32 Southwestern L.J. 427, 447 (1978). There is no evidence in our case that the Rosenberg Police Station has ever been designated by the juvenile court as an office where a child may properly be taken. There was a failure to comply with the requirements of Section 52.02(a) of the Texas Family Code. Section 54.03(e), Title 3, of the Code states:

> . . . An extrajudicial statement which was obtained without fulfilling the requirements of this title or of the constitution of this state or the United States, may not be used in an adjudication hearing . . .

The oral confession that led to the recovery of the radio was inadmissible. In the *Matter of D. M. G. H.*, 553 S.W.2d 827 (Tex.Civ.App.1977, no writ). The radio was the fruit of the tainted oral confession and is likewise inadmissible. See *Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962).

In point of Error 4, appellant maintains that the court erred in admitting his extrajudicial written statement where the evidence showed that the magistrate before whom he signed it was unaware of the "totality of the circumstances" underlying the making of the written statement and thus was unaware that the voluntariness of the written statement was tainted by the way the prior oral statement was taken. The State counters with the argument that

the written statement was made admissible by the totality of the circumstances, which were the magistrate's warning the appellant, talking to the appellant without anyone else present and receiving information about his background, certifying the juvenile competent to give a statement, inquiring briefly into the circumstances of appellant's arrest, and receiving a written statement shortly after the appellant's again being given his *Miranda* warning.

■ It is possible for an accused to first make an inadmissible statement and to later make an admissible one.

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantage of having confessed. He can never get the cat back in the bag . . . In such a sense, a later confession always may be looked upon as a fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed. *United States v. Bayer*, 331 U.S. 532, 540-41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947)

In many cases dealing with a tainted confession and its fruit, the statement was found to be tainted by an officer's failure to give the *Miranda* warning, but in our case L.R.S. was given the appropriate warning; it was his illegal detention at the police station that rendered the oral confession inadmissible. Thus there is not only a Fifth Amendment problem present but a Fourth Amendment one as well. L.R.S.'s situation is somewhat similar to that of the accused in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), although in that case the accused had been arrested without probable cause and without a warrant. While under arrest, he made two in-custody inculpatory statements after having been given the *Miranda* warnings. These statements led to his indictment for murder and subsequent conviction. The

Supreme Court of Illinois, recognizing that the accused's arrest was illegal, held that the statements were admissible on the ground that the giving of the *Miranda* warnings broke the causal connection between the illegal arrest and the statements. The United States Supreme Court reversed, stating:

> . . . [E]ven if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between illegal arrest and the statements made subsequent thereto, to be broken. [sic] *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486, 83 S.Ct. at 416. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.
>
> If *Miranda* warnings by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted.

422 U.S. at 601, 95 S.Ct. at 2261.

The Court held that the question of whether a confession is the product of free will under *Wong Sun, supra,* must be decided on the facts of each case. Factors to be considered when determining whether the confession was obtained by exploitation of an illegal arrest (or detention) include not only the *Miranda* warnings but also the time elapsed since the arrest or detention, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. Since Brown's statement was separated from his illegal arrest by less than two hours and there was no intervening event of significance, both statements were held inadmissible with the second statement being the fruit of the first. 422 U.S. at 604–605, 95 S.Ct. at 2262.

As to the time lapse in our case, L.R.S. was taken to the police station at 10:50 a. m. and orally confessed shortly thereafter. He was then transported to the magistrate, Section 51.09(b)(1) procedures were followed, and a written statement was obtained. The time span from arrest to final written statement was only three hours. The intervening circumstance was the magistrate's additional warning and compliance with Section 51.09(b)(1) procedures. The significance of these intervening events is substantially weakened by the fact that the magistrate was unaware that L.R.S. had been in the custody of the officers since approximately 10:30 a. m. and had already made an oral statement.

In *R. C. S. v. State of Texas,* 546 S.W.2d 939 (Tex.Civ.App.1977, no writ) the juvenile involved gave the officers a written confession on April 10. He was then placed in the juvenile detention center. The district attorney advised the police that the statement was obtained in violation of Section 51.-09(b)(1) of the Texas Family Code. Consequently on April 12, the juvenile was taken from his place of confinement to the office of the magistrate where the warnings and procedures sublined by Section 51.09(b)(1) were carried out. In a well-written opinion, the San Antonio Court held the second statement inadmissible, stating at pages 947–948:

> . . . The impact of a warning, given after the first incriminating statement has been made is much weaker than it would have been absent a prior confession, for one cannot be reasonably expected to persist in the denial of that which he has already admitted. Although the legislature has determined that the solemnity of a warning given by a judicial officer is more efficacious, in the case of a child, than one given by a policeman, even a warning by a magistrate, and a determination by the magistrate that the confession is voluntary, is of questionable value when the magistrate's investigation is made in the absence of all knowledge of a prior illegal statement which places the child at a psychological disadvantage in the subsequent interrogation. Under

such circumstances, the admonitions and counsel of the magistrate are unlikely to convert spiritless despair to alert diligence in a child whose secret is already 'out of the bag'.

The final factor to be considered is the purpose and flagrancy of the official misconduct. Although he said it was the usual routine, Officer Waite seems to have been aware that he was not proceeding in accordance with the Family Code procedures when he took L.R.S. to the police station for further questioning.

■ In this case, the defendant did not have a sufficient cooling-off period after his illegal detention to reflect and then give an admissible statement. See *United States v. Bayer, supra; Leyra v. Denno,* 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 1079 (1954). Furthermore, the magistrate in making his decision as to whether the written confession had been given voluntarily, was unaware of what had occurred prior to the appellant's being brought to his office. The written statement was tainted by the prior inadmissible oral confession and was, therefore, also inadmissible.

Having sustained the appellant's first and fourth points, we need not rule on his second and third ones.

The judgment of the trial court is reversed and rendered in favor of L.R.S.