**Franklin A. LITTLEFIELD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 85 234 CR.**

Court of Appeals of Texas, Beaumont.

Nov. 13, 1986.

John E. Kinney, Woodville, for appellant.

Patrick O. Hardy, Dist. Atty., Woodville, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was tried and convicted by a jury after his "not guilty" plea. The indictment charged him with capital murder. The court assessed Appellant's punishment at a term for life in the Texas Department of Corrections.

The alleged capital murder offense was said to have occurred on March 15, 1985. At that time, the Appellant was 16 years of age. No attack is made on his being tried as an adult. He was arrested about 17 miles Northeast of the Tyler County Courthouse. The arrest was effected at about 6:50 P.M. on Sunday, March 17, 1985. Immediately after his arrest, the Appellant was driven by the Sheriff of Tyler County, and another officer, to the county courthouse. This journey consumed about 20 minutes. Sheriff Fowler was accompanied by Roscoe Davis. Roscoe Davis is a criminal investigator with the Department of Public Safety. Roscoe Davis read the Ap-

pellant the Miranda warning before leaving the place of arrest.

After the Miranda warning, the Appellant said that Sheriff Fowler questioned him extensively about the details of the offense; Appellant answered the Sheriff's questions. Appellant takes the position, however, that he did not spontaneously or otherwise volunteer any information. Appellant argues that Sheriff Fowler definitely conveyed to him the idea that the only thing the Appellant could do to help himself was to make a clean breast of the whole affair. The Sheriff said that there was enough evidence to convict the Appellant so that, as a practical matter, the Appellant should just go ahead and tell it all.

Roscoe Davis testified that when the Appellant was arrested the State did not have, nor the prosecuting and investigating officers did not have, sufficient evidence to convict Appellant for capital murder.

A Justice of the Peace, Jimmy Davis, was present part of the time when the Sheriff questioned Appellant. Appellant said that, between Friday, March 15, 1985, at 6:00 A.M. until Monday, March 18, 1985, at about 1:00 A.M., he had had only 6 or 7 hours of sleep. He was tired and afraid.

Further, Appellant said that, after he arrived at the county courthouse, he was taken to the Sheriff's office. The door was shut. The door remained shut and he was confined inside the Sheriff's office for a period of 20 to 25 minutes. When the Appellant, with the officers, arrived at the county courthouse a certain juvenile probation officer, Betty McBride, was present. The group of 3 saw the juvenile officer, McBride. She was not asked to join them. They proceeded past McBride into Fowler's private office. The above are the Appellant's contentions. The State's version is very different.

The Sheriff testified that he offered to turn the Appellant over to the juvenile probation officer, McBride, when he arrived at the courthouse. The Sheriff said that McBride declined this offer. She apparently wanted to wait for a more experienced

juvenile officer, who was a male. Sheriff Fowler and Roscoe Davis denied that the questions that had begun in the patrol vehicle were continued after their arrival at Woodville with the Appellant in their custody and proceeded to the Sheriff's private office.

About 20 to 25 minutes after the group of 3 arrived at the courthouse, Appellant was delivered to Randy Odom, who was a more experienced juvenile probation officer for Tyler County. Shortly after this event, a Justice of the Peace, Jimmy Davis, administered to the Appellant the statutory warning required to be given to juveniles prior to taking their written confessions. After the Appellant had been given the required statutory warning for juveniles, the Appellant made a written confession to Randy Odom. This took place about 8:22 P.M. on March 17, 1985. The written confession was made in the presence of Odom, Mike McCulley and McBride. The statement was completed about 10:30 P.M. on March 17, 1985. McCulley was a Deputy Sheriff but served principally as a jailer. Appellant's written confession was signed by Appellant in the presence of Jimmy Davis and other witnesses at about 11:03 P.M. on March 17, 1985.

At the time of Appellant's arrest, and thereafter, the Sheriff knew that there was no office nor detention facility in Tyler County that was qualified to receive and to hold juveniles. Randy Odom knew this.

The prosecutor argues that a more correct statement of the facts of the case would be that, on or about March 16, 1985, a Chief Deputy Skinner was informed of a burglary of the home of Eugene Sheppard. After an investigation, it was discovered that 3 guns had been taken from the Sheppard residence. On the same date, Chief Skinner was called by Mrs. Marianne Littlefield. Mrs. Littlefield stated that she found 2 guns in the back of her son's pickup truck. Even prior to this call, Mrs. Littlefield, who is the mother of the Appellant, had actually reported her son as missing. She had stated that she had found her son's truck in a ditch. Mrs. Littlefield also stated that she felt that 2 of the 3 guns had come from the house of Sheppard. Later, a positive identification was made of these guns.

Also, on the same day, a fire was reported at the home of Altagracia McKee. A rifle, which was a third gun that had come out of the Sheppard burglary, was found at this scene—at the home of Altagracia McKee. Also, the remains of a human body were found at the scene of the fire at McKee's house.

Later, on March 17, 1985, while the investigation of the Sheppard burglary and the McKee fire were progressing, Sheriff Fowler, Roscoe Davis and Justice of the Peace Davis, set up an actual road block. The Appellant went through the road block at a high speed, barely missing the officers with his vehicle. The officers, at that point, fired at the tires. They missed the tires. A high speed chase developed. The chase involved every available county law enforcement unit. Appellant wrecked his vehicle. Appellant was approached by Game Warden Bob Rawls. Appellant was then taken into custody and read his Miranda rights. The group described above proceeded to Woodville, during which time the Appellant, according to the State, gave a valid, oral confession. This oral confession lead to the finding of articles taken from the residence of Altagracia McKee, as well as the weapon used in the McKee affair. The prosecutor contends that the Sheriff brought the Appellant to the Tyler County jail and asked Betty McBride to take the prisoner. She declined and said she would rather wait for Odom. Randy Odom arrived and the Appellant was turned over to Odom. Appellant was then brought before Jimmy Davis and was advised of his rights. Odom then questioned the Appellant, who gave a written confession.

### The "Corpus Delicti" Defense

The Appellant, in his first ground of error, argues that his motion for instructed verdict should have been granted because the prosecutor failed to prove the "corpus

delicti" of the capital murder. We will try to make this opinion of reasonable length.

The record demonstrates that a Reverend R.C. Tillery had visited Altagracia McKee, the deceased, on March 15, 1985. It was a pastoral call. The Reverend's wife accompanied him. The Reverend was at Mrs. McKee's home from about 5:00 P.M. until approximately 6:40 P.M. He said Mrs. McKee showed no sign of stress or nervousness. She appeared to be in good physical health. Reverend Tillery had not seen Mrs. McKee since that time. The deceased was 59 years old.

The evidence showed that the law enforcement officers saw the suspected vehicle coming. The red lights of the officer's unit were on. Ranger Davis signaled for the oncoming vehicle to stop. He testified that the vehicle actually gained speed. He identified certain pictorial evidence as depicting the same vehicle that Appellant was driving when the Appellant ran past them. Ranger Davis swore that Littlefield had stated that he went to Mrs. McKee's home to kill her and to rob her. He wanted money to go to Mississippi. The ranger said that Littlefield confessed that he shot Mrs. McKee 3 times in the back through a bathroom window and that he actually waited from about 6:30 P.M. to 10:30 P.M. for a clear shot with an unobstructed view. Littlefield said he then crawled through the bathroom window. Littlefield was reported to have stated that he shot Mrs. McKee with a .22 Magnum revolver. The ranger took the position that none of the law enforcement officers knew the location of this pistol before the oral statement. Appellant said there was stolen money and jewelry in the vehicle along with the murder weapon. The ranger then said that a search warrant was issued. A search was made of the deceased's car. The articles belonging to Mrs. McKee were found and inventoried.

Ranger Davis also testified that Littlefield told about his dragging the body of Mrs. McKee to her bedroom and to her bed and placing a lighted candle under the bed.

Leon Fowler, who was the Sheriff of Tyler County, testified, with some minor exceptions, to about the same facts as Roscoe Davis. Another officer of the law, B.J. Vardeman, testified that the vehicle that Appellant was driving when apprehended actually belonged to Altagracia McKee, the deceased woman. Vardeman further swore that, when the search warrant was executed upon the car that Appellant was driving when he was apprehended, many of the things described in the statement of Appellant were found; such as personalized checks, the pistol used in the murder, certain jewelry, money and other articles. Vardeman stated the remains found on the bed in question were the remains of a human being.

Dr. S.M. LeBer, a physician and pathologist, testified that the autopsy he performed was upon the remains of a human body. His opinion, as a pathologist, was that the cause of death was asphyxiation due to house fire. LeBer, on cross-examination, stated that there was blood in the trachea. This finding, at autopsy, could have been consistent with a gunshot wound that penetrated the lungs of the deceased woman. The autopsy conclusions were:

"CONCLUSIONS: Based solely on the above findings it is determined that:

"1. The deceased was alive at the time of the fire

"2. That she may have received some trauma to the face or mouth region, because of the blood in the trachea.

"3. That she was lying on her back at the time of the fire

"4. That with reasonable medical probability the Cause of Death was Asphyxiation due to smoke inhalation and fire"

Also, State's Exhibit No. 24 was admitted into evidence. It was Appellant's written confession. A number of exhibits were placed in evidence by the State. A large part of these exhibits were items located in the execution of the search warrant on McKee's car.

We decide the Appellant's first ground of error is not sustainable. The identity of the alleged perpetrator of the

crime can be established by the confessions. *See R.C.S. v. State,* 546 S.W.2d 939 (Tex.Civ.App.—San Antonio 1977, no pet.). In *R.C.S.* the court held that the requirement that the State prove the corpus delicti simply means that there must be *proof that* a crime has been committed by somebody. All that is required is that there must be some evidence, other than the admission or confession, that a crime was committed by someone. *Self v. State,* 513 S.W.2d 832 (Tex.Crim.App.1974). This salutary rule, at times set forth in terms that a requirement exists that the confession of the accused must be corroborated, does not apply to the question of the accused's involvement in the crime because the identity of the accused, as the perpetrator of the crime, can be established by his confession alone. *See R.C.S. v. State, supra,* at page 942. *Wooldridge v. State,* 653 S.W.2d 811, 816 (Tex.Crim.App.1983), contained the following:

> "It is well settled that if there is some evidence corroborative of a confession, the confession may be used to establish the 'corpus delecti' [sic]...."

*See White v. State,* 591 S.W.2d 851 (Tex. Crim.App.1979).

■ In *Gordon v. State,* 667 S.W.2d 544 (Tex.App.—Beaumont 1983, pet. ref'd), our court held:

> "If there is some evidence corroborating a confession, confession may be used in establishing the corpus delicti; ..."

We decide that there was evidence corroborating the confession and that the State established the corpus delicti. Mrs. McKee was not seen after March 15, 1985. Her house was definitely burned. There is evidence that there was a female human being over 50 years old that was found on the bed. The accused was in possession of McKee's car. There was a Magnum revolver weapon found in the trunk of that car. The first ground of error is overruled.

### The Oral Confession

Next, the Appellant argues that it was error to permit the oral confession into evidence. In an effort to keep the length of this opinion within appropriate limitations, we simply state that part of the record tends to show that the Appellant was not forced, tricked, coerced or promised anything to make the oral statement. One of the apprehending officers did state that, from his prior experience, it was his opinion that Littlefield was in deep trouble. Officer Davis did testify that the facts of the oral confession were later established as having been truthful and that the oral statement did lead to certain stolen articles, as well as the weapon, the accused had said was used in the crime.

The Sheriff testified, in some detail, concerning the oral statement of the Appellant. We have reviewed this evidence. In brief summary, the Sheriff swore that the Appellant was not coerced or tricked. He was not put under duress to make a statement of any kind; Littlefield was not promised anything. Of course, the statement showed conduct that did establish Littlefield's guilt and the Sheriff did state that the oral confession lead to the stolen property and to the instrument the accused said he used to commit the offense. The Appellant, in the oral confession, according to the Sheriff, made an oral confession to the effect that he waited around until dark near McKee's house. He waited at the edge of her yard. In fact, the accused waited until about 10:30 P.M. to get a clear and unobstructed shot at the woman. The accused said that he shot the deceased 3 times in the back through the bathroom window. Then he knocked the window out and crawled into the house to get money. The Appellant stated that he, then, took certain bed linens, lanterns, money and some blank personal checks of the dead woman. He also took possession of some jewelry and other items. The Sheriff stated that the accused told him he was in the deceased victim's house from about 10:30 P.M. until about 3:00 or 4:00 the next morning, loading these things in the dead woman's car. He then said he placed Mrs. McKee's body on the bed and put a candle under the bed to burn the evidence. After a search warrant was obtained, the car of

the dead woman was searched. The many articles the Appellant said were located in the car were found. The Sheriff said that, before the oral statement was given, neither he nor any of the other law enforcement officers knew of the weapon's whereabouts or the whereabouts of the stolen property. The Sheriff said that the Appellant volunteered most of the statement on the ride back to the courthouse but he did question Littlefield some. Sheriff Fowler said that he did not tell Littlefield that he was in a heap of trouble. The Sheriff said the statement was that he told Littlefield that he, Littlefield, could save everybody a lot of trouble if he told the truth.

There was an original *Jackson v. Denno* hearing. Later, the trial judge ruled that the Appellant's Motion to Suppress the Defendant's statement was overruled. At that point, the Appellant asked to reopen the *Jackson v. Denno* hearing. This was granted by the Court. The only witness at the reopened hearing was Franklin Littlefield. At this reopened hearing, among other things, the Appellant said the Sheriff told him it would help the Appellant to make a statement or confession. When asked by his own attorney:

"Q Did he say anything else to you about how it would help you?

"A Not that I can recollect.

"Q Did he tell you that you were in a lot of trouble?

"A Yeah.

"Q Did he tell you he would do everything in his power to help you if you would confess?

"A Yes, sir."

Appellant, at this second *Denno* hearing, testified that he told Fowler and Davis about the location of certain properties that came from McKee's house, telling them that they were in the trunk of the car. Franklin told the officers about the revolver. The Appellant said he had fired 3 shots and that these shots had been fired into McKee's body. Appellant told the Sheriff that he had lit a candle under McKee's bed, with her in the bed; and, after he shot Mrs. McKee, he climbed through the window to get into the inside of her house. He told the Sheriff he had taken "some goods belonging to Mrs. McKee" and that he had taken some of the goods and put them in the trunk of the car.

Appellant argues the introduction of the oral confession was error because Appellant contends that the Sheriff obtained it by using deception, compulsion, and persuasion rendering it involuntary. He maintains this procedure violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, sections 10 and 19 of the State Constitution and *TEX.FAM.CODE ANN. sec. 54.03(e)* (Vernon 1986). But the accused concedes the trial court, in its order admitting statement of defendant, found that the oral statement to the Sheriff was voluntary, not resulting from improper inducement or from coercion.

A conflict exists in the evidence as to whether an inducement, if any, was a positive promise of benefits to Appellant. Also, Appellant agrees in his brief that to exclude a confession the offensive, prohibited promise must be such as to influence the accused to speak untruthfully.

■ Under *TEX.FAM.CODE ANN. sec. 51.09(b)(2)* (Vernon 1986), an oral statement of a child is *admissible* in evidence if the facts or circumstances in such statements are found to be true and tend to establish the child's guilt. In *Salazar v. State*, 648 S.W.2d 421 (Tex.App.—Austin 1983, no pet.), the appellant, a sixteen year old, disclosed the following facts to two Austin police officers: (1) that he participated in a burglary; (2) that he took a television set; (3) that he knew the location of the television set; and, (4) that he would make arrangements to have the television set returned. His probation officer and a police officer went to the location designated by the accused where they met the accused's sister and another girl. The 2 females drove up in the accused appellant's automobile and delivered the stolen television set to the officers. The trial court held that the appellant's oral statement was admissible, pursuant to *sec. 51.09(b)(2)*

of the The Texas Family Code, because, without the oral statement, the prosecution could not have discovered the stolen television set.

▇▇▇ In the case at bar, an oral statement was made by a sixteen year old as to events from Friday, March 15, 1985, until the time of his capture. No promise, force, coercion or trickery was found to exist by the judge, in connection with the oral statement. The oral recitation was later proven to be truthful and accurate. It lead to a trove of purloined articles, including the weapon used in the lethal crime. *TEX. CRIM.CODE ANN. sec. 51.09(b)(2)* (Vernon 1986) was satisfied, as were the other requirements. Ground of Error No. 2 is overruled.

### *The Written Statement*

A written statement was entered into evidence. The 16–year-old Appellant attacks his typed confession alleging it was the product of *illegal detention* resulting in violation of his Fourth, Fifth and Fourteenth Amendment rights of the United States Constitution, *TEX. CONST. art. I, secs. 9, 10 (1876, amended 1918), and 19,* and *TEX.FAM.CODE ANN. secs. 52.02(a) and 54.03(e)* (Vernon 1986). He says the typed confession lacked voluntariness. Again, the Court held against these contentions, after full hearings. There is conflicting evidence, but a string of testimony reflects that the oral confession was completed by the time the juvenile Appellant arrived at the County Seat. At once, the Sheriff presented the accused to Betty McBride, an officer of the juvenile court, although she had not been formally designated as such by written order. She was inexperienced and wanted Randy Odom to act. Odom was experienced and was of the same sex as the accused. We decide no reversible error was committed by the State. *TEX.FAM.CODE ANN. sec. 52.-02(a)* (Vernon 1986) was observed substantially under the exigencies. No approved detention facility existed in Tyler County. The nearest detention place was in Beaumont. Littlefield was kept in the Sheriff's

personal office awaiting Odom. Some evidence demonstrates no part of the oral confession nor the written one took place in the Sheriff's office. The trial judge believed the State's evidence.

▇▇▇ We hold the waiting for Odom, the time of Appellant in Fowler's personal, private office, and the failure to transport the accused directly to Beaumont did not singly or cumulatively violate the Fourth, Fifth or Fourteenth United States Amendments nor the Texas Constitution, Article I to an extent to require reversal.

▇▇▇ *TEX.FAM.CODE ANN. sec. 52.02* (Vernon 1986) provides, in relevant part:

"(a) A person taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:

"(2) bring the child before the office or official designated by the juvenile court;

"(3) bring the child to a detention facility designated by the juvenile court; ..."

Although there were extenuating circumstances, we conclude the better opinion is that the non-compliance with the said *section 52.02(a)(2)* and *(3)* renders the written confession inadmissible. However, since the oral confession was admissible, the admission of this written confession does not result in reversible error. *See In the Matter of L.R.S.,* 573 S.W.2d 888 (Tex.Civ.App. —Houston [1st Dist.] 1978, no pet.); *see also In the Matter of D.M.G.H.,* 553 S.W.2d 827 (Tex.Civ.App.—El Paso 1977, no pet.), holding a written confession inadmissible where a 16–year-old juvenile, 6 months pregnant, was arrested at 12:30 p.m., held in custody at the police substation until 7:25 p.m., then taken before a magistrate and at 10:20 p.m. delivered to a juvenile detention facility. During this entire time, she was not provided with any meals and food until she arrived at the juvenile detention facility at 10:20 p.m. The court held that this was clearly an *unnecessary delay* and the delay was in violation of the Family Code, *sec. 52.02,*

thereby rendering her confession and the fruits thereof inadmissible in evidence. We have no such delay or lack of meals and food in this case.

We determine that *In the Matter of D.M. G.H. supra,* is distinguishable from the case sub judice. We opine that *In the Matter of L.R.S., supra,* is factually closer to our case.

It is interesting to note that Judge Clinton, in a concurring opinion, in *Darden v. State,* 629 S.W.2d 46 (Tex.Crim.App.1982) expressed agreement with *In the Matter of D.M.G.H., supra;* nevertheless, he did not reverse the conviction.

Since the oral confession is valid, we are unwilling to set aside the judgment. Affirmed are the judgment and sentence below.

AFFIRMED.