Affirmed and Opinion filed July 29, 2004









Affirmed and Opinion filed
July 29, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00362-CR

____________

 

JON PAUL MARSH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_________________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 877,675

_________________________________________________

 

O P I N I O N

Jon Paul Marsh, a juvenile, was charged with
felony murder, tried as an adult, and convicted by a jury of the offense.  He was sentenced to confinement in the
Institutional Division of the Texas Department of Criminal Justice for a period
of seventy years.  In two issues,
appellant contends the trial court erred in admitting incriminating statements
into evidence because (1) the statements were taken in violation of Title 3 of
the Family Code and article 38.23 of the Texas Code of Criminal Procedure, and
(2) the State failed to prove that appellant knowingly, intelligently, and
voluntarily waived his rights.  We
affirm.








I.  Background

On March 20, 2001, appellant, sixteen years old at
the time, murdered his friend and neighbor, Nathan Mayoral, by hitting him in
the head with a hammer and a clay pot. Appellant placed a plastic bag over
Mayoral=s head,
wrapped his body in a sheet, and secured the wrapping with duct tape and postal
tape.  Appellant loaded Mayoral=s body,
backpack, and coat into his vehicle.  He
then threw Mayoral=s body
into a ditch, covering it with a piece of plywood, and disposed of the backpack
and coat in a storm drain.  Mayoral=s body
was discovered nine days later.

Detectives Alex Ortiz and Allen Beall, with the
Harris County Sheriff=s
Department Homicide Division, were assigned to investigate the murder.  The detectives received information that
Mayoral had been in a homosexual relationship with appellant.  Beall provided a set of appellant=s
fingerprints, already on file with the Sheriff=s
Department, to the crime scene unit processing the physical evidence.  Appellant=s
fingerprints matched those prints found on the tape wrapped around Mayoral=s
body.  The detectives used this
information to obtain a probable cause warrant from the Harris County District
Attorney=s Office
on March 31, 2001.  Subsequently, the
detectives attempted to arrest appellant at his place of employment, but were
unsuccessful.  They set up surveillance
at his residence on the evening of April 1. 
While there, the detectives observed appellant leave his home,
accompanied by his brother, in a Jeep.  A
patrol unit stopped the Jeep and an officer escorted appellant to a car where
Beall was waiting.  Beall advised
appellant that he and Ortiz were with the Sheriff=s
Department and were conducting an investigation into Mayoral=s
murder.  They asked appellant to
accompany them to their office and discuss the case.  Appellant stated he would be willing to talk
with them, but did not know any more than what he had heard.  At 7:04 p.m. that evening, the detectives
transported appellant to a juvenile processing center at 333 Lockwood, the
Precinct 6 Constable=s office.









Appellant=s
brother, driving his Jeep, followed the detectives for a short time, but was stopped
by another detective, Russell Coleman. 
Beall had instructed Coleman to stop the Jeep and explain to appellant=s brother
that appellant was in the custody of the Sheriff=s Department
for the murder of Mayoral.  Beall also
instructed Coleman to go to appellant=s home
and advise his parents that he was in custody. 
After arriving at appellant=s home,
Coleman testified he informed appellant=s parents
that Asome new
information had [come] up in the investigation of the death of Nathan Mayoral
and that at that time we had a court order and we were detaining their son for
the investigation.@[1]  Further, Coleman testified he informed
appellant=s parents that Beall was the lead
detective and provided them with Beall=s phone
number and his office address at 601 Lockwood. 








In the meantime, while en route to the juvenile
processing office and before any questions were asked of appellant, Ortiz read
appellant his juvenile statutory warnings.[2]  According to the detectives, appellant was
not restrained in any way and, although they were carrying their weapons, they
were never used or exhibited to appellant. They arrived at the juvenile
processing office at 7:57 p.m. and began interviewing appellant at 8:10
p.m.  The detectives spoke with appellant
regarding his relationship with Mayoral and confronted him with the fact that
his fingerprints were located on the tape found on Mayoral=s
body.  At about 9:25 p.m., appellant told
the detectives he and Mayoral were involved in a consensual homosexual
relationship.  Appellant stated he felt
the homosexual relationship was an Aabomination@ and
wanted to end it, but could not help himself when he was with Mayoral.  He stated he had decided the only way to end
the relationship was to kill Mayoral. 
Appellant also gave Beall specific information about the murder,
including the location of the tape and hammer used, the presence of a sheet in
his home similar to the one found on Mayoral=s body,
and the location of Mayoral=s tennis
shoes, backpack, and coat.  Beall
testified that these items were subsequently recovered from the areas
identified by appellant.  During this
time, appellant did not indicate that he wanted to speak to his parents or a
lawyer.  The detectives did not threaten
or intimidate appellant or promise him any benefits in exchange for his
cooperation.

After providing this statement, appellant
expressed a willingness to make a written or recorded statement.  Appellant was then taken to a magistrate=s
office.  At 10:40 p.m., appellant met
with the magistrate and was admonished of his rights.  Appellant indicated he understood those
rights, initialed them, and the magistrate found that appellant knowingly,
voluntarily and intelligently waived his rights.  At 11:03 p.m., Beall and Ortiz interviewed
appellant and recorded his statement.  At
the beginning of the interview, appellant stated he understood the legal
warnings he had received and was willing to talk with them again and tell them
what had happened.  Appellant stated the
same facts as in his unrecorded statement, providing explicit details of the
crime.  The interview was concluded at
11:30 p.m.

In the trial court, appellant filed a motion to
suppress any oral or written statements, claiming they were inadmissible under Chapter
38 of the Code of Criminal Procedure and Family Code sections 51.095, 52.02,
and 52.025.  The trial court denied
appellant=s motion and this appeal
ensued.  

II.  Standard
of Review








A trial court=s ruling
on a motion to suppress is generally reviewed under an abuse of discretion
standard.  Jackson v. State, 33
S.W.3d 828, 838 (Tex. Crim. App. 2000). 
If the resolution of an issue is based upon the evaluation of witness
credibility or demeanor, we must grant almost total deference to the trial
court=s
determination of the historical facts.  In
re C.R., 995 S.W.2d 778, 782 (Tex. App.CAustin
1999, pet. denied).  The trial court is
the exclusive fact finder in a motion to suppress hearing and, therefore, it
may choose to believe or disbelieve any or all of a witness=s
testimony.  Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). 
We conduct a de novo review, however, of the trial court=s
application of the law to those facts.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  Also, we examine the
evidence in the light most favorable to the trial court=s
ruling.  Roquemore v. State, 60
S.W.3d 862, 866 (Tex. Crim. App. 2001).

III.  Discussion

A.  Admissibility of Appellant=s
Statements

In his first issue, appellant argues the
detectives failed to comply with Section 52.02(b) of the Family Code because
they did not sufficiently notify appellant=s parents
he was taken into custody or advise them of his whereabouts.  See Tex.
Fam. Code '
52.02(b).  Further, appellant asserts he
was interrogated while at the juvenile processing office in violation of
Section 52.025(b), thus rendering his statements inadmissible under Section
51.095.  See id. '' 51.095,
52.025(b).

1.  Section
52.02(b)








Section 52.02(b) provides that a person taking a
child into custody must promptly notify the child=s parent
or guardian of the person=s action
and a statement of the reason for taking the child into custody.  Tex.
Fam. Code '
52.02(b)(1).  Appellant argues that this
parental notification provision was violated because the detectives made Aevery
effort@ to
ensure he was arrested and interrogated away from his parents and because
Coleman gave his parents inaccurate information as to appellant=s
whereabouts following his arrest.  

The record reflects that immediately after
appellant was taken into custody, Detective Coleman went to appellant=s home
and spoke with appellant=s
parents.  Coleman testified he advised
appellant=s parents that Asome new
information had [come] up in the investigation of the death of [Mayoral] and
that at that time we had a court order and we were detaining their son for the
investigation.@ 
Coleman stated he specifically informed appellant=s parents
that it was Ain reference to the homicide of
Nathan Mayoral.@  Further, Coleman advised appellant=s parents
that Beall was the lead detective in the case and provided them with Beall=s office
address and phone number.  Thus, Coleman
complied with the notice requirements of section 52.02(b).

Appellant, however, argues that the notification
provision exists to allow parents the opportunity to assist their child while
in custody, either through obtaining counsel, being present with the child, or
in some other manner; therefore, because appellant=s parents
were not given correct information as to where appellant was being held, the
intent of the notification provision was frustrated.  However, Section 52.02(b) requires that a
parent or guardian receive notice only of the child=s being
taken into custody and the reason for that action.  Even if Coleman may have incorrectly advised
appellant=s parents of the specific address
where appellant was taken, this does not necessarily establish a violation of
the provision.  Although appellant=s father
testified at the suppression hearing that Coleman intentionally misled him and
his wife into believing appellant was not being taken into custody, but was
only being questioned, Coleman testified regarding his statements to appellant=s parents
and that his understanding at the time was that appellant would indeed be taken
to 601 Lockwood, the address he provided. 
The trial court found that Ano one
attempted to intentionally mislead@
appellant=s parents as to his whereabouts
following his arrest and Coleman=s
testimony supports that finding.  We
defer to the trial court=s finding
on this fact.  In re C.R., 995
S.W.2d at 782.  








In sum, we find there was no violation of section
52.02(b).  Therefore, we do not address
whether appellant established a causal connection between a violation of the
provision and the making of his statements.[3]  See Tex.
Code Crim. Proc. Art. 38.23(a); Hampton v. State, 86 S.W.3d 603,
611 (Tex. Crim. App. 2002).  

2. 
Appellant=s
Unrecorded Statement  

As noted, appellant provided two statements that
are at issue here.  The first is
appellant=s unrecorded oral statement given
to detectives prior to being admonished of his rights by the magistrate.  Beall was allowed to testify at trial as to
the content=s of this statement.  The second statement, also made orally, was
electronically recorded and given after appellant received the appropriate
warnings from the magistrate.  This
statement was admitted into evidence at trial. 
Regarding his first statement, appellant argues that Beall and Ortiz
violated sections 52.025 and 51.095 of the Family Code by subjecting appellant
to Aover
three hours of continuous custodial interrogation@ prior to
taking him before the magistrate.  See
Tex. Fam. Code '' 51.095,
52.025.  

Title 3 of the Family Code sets forth specific
procedures governing the handling of juveniles in connection with issues of
detention and confession.  See
Contreras v. State, 67 S.W.3d 181, 184 (Tex. Crim. App. 2001); Comer v.
State, 776 S.W.2d 191, 196 (Tex. Crim. App. 1989).  The purpose of these procedures is to reduce
an officer=s impact on a juvenile in custody
while also protecting the public.  See
Contreras, 67 S.W.3d at 184; Baptist Vie Le v. State, 993 S.W.2d
650, 655 (Tex. Crim. App. 1999); see Tex.
Fam. Code '
51.01.  Police officers and other law
enforcement personnel involved in handling juveniles are Abound to
comply with the detailed and explicit procedures@ of Title
3.  Contreras, 67 S.W.3d at 184.








Section 51.095 governs the admissibility of a
child=s
statement taken while in custody. See Tex.
Fam. Code '
51.095(b).  Under that section, an oral
statement made by a child which is corroborated by evidence establishing his
guilt, such as the finding of secreted or stolen property, is admissible in
subsequent proceedings against the child. 
See Tex. Fam. Code '
51.095(a)(2).  The State relied on this
provision to argue that appellant=s first
statement was admissible because it was corroborated by evidence establishing
his guilt; the trial court agreed, finding appellant=s
unrecorded statement admissible under this provision.[4]  However, although a statement may meet the
admissibility requirements of Section 51.095, when the provisions of Title 3,
dictating the necessary procedures for taking the child=s statement,
are violated, the statement may be nonetheless inadmissible.  See Roquemore, 60 S.W.3d at 867B68
(citing Comer, 776 S.W.2d at 196).








Under Title 3, Section 52.025(b) provides that a
child may be detained at a juvenile processing office only for limited
purposes, one of which is for the Areceipt
of a statement by the child under section 51.095(a) (1), (2), (3), or (5).@  Tex.
Fam. Code '
52.025(b)(5).[5]  In addition, even if a child is taken to a
juvenile processing office, it does not dispense with the requirement that the
officer subsequently and Awithout
unnecessary delay@ proceed
with one of the options required under Section 52.02(a).[6]  See Vie Le, 993 S.W.2d at 655.  Thus, the juvenile processing office is Alittle
more than a temporary stop for completing necessary paperwork pursuant to the
arrest.@[7] Id. at
654.  

Here, the parties do not dispute that the
detectives administered appellant=s
juvenile statutory warnings while on the way to the juvenile processing office,
nor that appellant was in custody when he accompanied Beall and Ortiz to the
juvenile processing office.  See
Jeffley v. State, 38 S.W.3d 847, 855B56 (Tex.
App.CHouston
[14th Dist.] 2001, pet. ref=d)
(setting forth analysis of Ain
custody@
determination relative to juveniles).  Even assuming, however, without deciding that
the officers acted in violation of section 52.025 and a causal connection
existed between that violation and appellant=s
statement, we conclude that under the circumstances of this case, admitting
testimony regarding appellant=s
unrecorded statement constitutes harmless error.

3.  Harm
Analysis








AUnder
Rule 44.2 of the Texas Rules of Appellate Procedure, the nature of the error
controls the standard under which it is evaluated.@  Easley v. State, 986 S.W.2d 264, 267
(Tex. App.CSan Antonio 1998, no pet.).  Constitutional error requires reversal of the
judgment or punishment unless the reviewing court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.  Tex. R. App. P. 44.2(a); Franklin v. State, No.
1481-00, 2004 WL 1462101, at *3 (Tex. Crim. App. June 30, 2004).  Any other error, defect, irregularity, or
variance not affecting substantial rights must be disregarded.  Tex.
R. App. P. 44.2(b); Franklin, 2004 WL 1462101, at *3.  

Because the improper admission of a statement in
response to custodial interrogation implicates the constitutional right against
self-incrimination, the trial court=s error
in this case was constitutional error.  Jeffley
v. State, 38 S.W.3d 847, 858 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  Accordingly, we must reverse the trial court=s ruling
unless the record establishes beyond a reasonable doubt that the erroneous
admission of the unrecorded statement did not contribute to appellant=s
conviction.  Id. 

In applying this standard of review we do not
focus on the propriety of the outcome of the trial.  Wesbrook v. State, 29 S.W.3d 103, 119
(Tex. Crim. App. 2000).  Instead, we
focus on the error and its possible impact in light of the existence of other
evidence.  Id.  To perform a harmless error analysis an
appellate court should consider the following factors:  (1) the source of the error; (2) the nature
of the error; (3) whether the error was emphasized and its probable collateral
implications; (4) the weight a fact finder would probably place on the error;
and (5) whether declaring the error harmless encourages the State to repeat it
with impunity.  Wilson v. State,
938 S.W.2d 57, 61 (Tex. Crim. App. 1996). 
We apply these factors to the error at issue here. 








The contents of appellant=s
unrecorded statement came in at trial through Beall=s
testimony.  Beall gave a brief summation[8]
of appellant=s unrecorded statement.  Following this, the tape-recorded statement B
approximately thirty minutes in length B was
admitted into evidence and played for the jury. 
The jury also received a written transcript of the recorded
statement.  

Appellant=s trial
attorney questioned, briefly, Beall and Ortiz concerning the unrecorded
statement; however, the State did not emphasize the statement during
trial.  Indeed, at trial, appellant=s defense
was that his use of Paxil rendered him temporarily insane at the time he
murdered Mayoral.  This insanity defense
was the primary focus of defense counsel=s
questioning and argument at trial. 
Likewise, the State concentrated on rebutting appellant=s
defense.  Neither party disputed that
appellant had in fact killed Mayoral and had done so as he indicated in his
statements.  Moreover, his fingerprints
were found on the duct tape used to wrap Mayoral=s
body.     

Importantly, appellant=s second
statement, taken in accordance with Title 3 and properly admitted into
evidence, established the same facts as his unrecorded statement.  See, e.g., Littlefield v. State,
720 S.W.2d 254, 260 (Tex. App.CBeaumont
1986, pet. ref=d) (finding inadmissible written
confession taken in Anon-compliance@ with
Title 3, did not result in reversible error because oral confession was
properly admitted).  In his recorded
statement, appellant gave the detectives explicit details concerning the
murder.  He admitted to calling Mayoral
the night before the murder and asking him to Askip
school.@  He admitted that he and Mayoral had sex on
the day of the murder, he then killed Mayoral and disposed of his body.  








Moreover, appellant=s own
expert witness, Dr. Johnstone, a doctor treating appellant after Mayoral=s murder,
testified without objection that appellant Abungled@ his way
through the murder and was Ashocked
when it was finished and [appellant] saw blood coming from [Mayoral=s] mouth
and nose . . . .@  He also testified that appellant felt he
needed to Asomehow get rid of his
involvement in homosexual activity. . . it became allowable in [appellant=s] mind
to solve the problems by eliminating [Mayoral].@  Further, the doctor stated that appellant
said Athe
thought to kill [Mayoral] appeared as a conclusion in his mind,@ not
something he had thought through.  He
also stated that appellant was remorseful for having committed the murder.  

Given this testimony and appellant=s
recorded statement, it is unlikely the jury placed much weight on Beall=s
testimony concerning appellant=s
unrecorded statement.  See, e.g., Jeffley,
38 S.W.3d at 859B60.  Finally, given the strict requirements upon
law enforcement officers imposed by Title 3 regarding interrogation of
juveniles, it is unlikely that declaring admission of appellant=s first
statement harmless would encourage the State to repeat the error with
impunity.  See, e.g., id.
at 860.  We find the record establishes beyond
a reasonable doubt that the admission of appellant=s
unrecorded statement did not contribute to his conviction.  

4. 
Appellant=s
Recorded Statement

Appellant also contends that his second statement,
recorded in accordance with section 51.095, was inadmissible because it was a
product of his first unrecorded statement. 
Thus, appellant argues the second statement must be excluded because of
the Ataint@ of
illegality of the first statement.  

Courts have held that once a defendant confesses,
a second confession may be Afruit of
the first@ illegal confession.  See Griffin v. State, 765 S.W.2d 422,
427, 430 (Tex. Crim. App. App. 1989).  The applicable inquiry involving a second
confession under the circumstances of this case is one of voluntariness.  See id. at 427 (noting that the United
States Supreme Court has characterized the inquiry of interrogation techniques
as Aone of
voluntariness@).  Once the voluntariness of a confession is
raised, the State carries the burden of proving the confession was given
voluntarily.  Id.  Thus, in considering whether appellant=s second
statement was voluntary, we examine the totality of the circumstances.  In re R.J.H., 79 S.W.3d 1, 8 (Tex.
2002); Rodriguez v. State, 968 S.W.2d 554, 558 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).  








In Griffin, a case with similar facts, the
police arrested a sixteen-year-old for murder and read her statutory rights
to her.  765 S.W.2d at 424.  The juvenile made an oral statement
implicating herself as a party to the murder. 
Id.  After making the oral
statement, the juvenile was taken before a magistrate who administered the
appropriate warnings.  Id. at
425.  The magistrate determined the
juvenile understood the warnings.  Id.
at 424B25.  As here, the magistrate was not told of the
juvenile=s prior
oral statement.  See id. at
424.  The juvenile then gave a written
statement in compliance with the Family Code, which was determined to be
admissible.  Id. at 431.  The court found there was no evidence the
juvenile would not have given the second statement but for the earlier oral
confession.  Id. at 430.

Here, as in Griffin, the State established
the officer=s compliance with section
51.095(a) before appellant=s
recorded statement was taken.  Appellant
does not claim that his prior unrecorded statement was involuntary, nor that he
was not admonished of his statutory rights prior to making that statement.  Although appellant=s second
statement closely followed his first, he was taken to a magistrate in the
interim.  During that time he was not
exposed to any adult offenders or threatened or coerced in any manner.  When appellant met with the magistrate, he
indicated he understood his rights, including his right to have an attorney
present and to terminate the interview at any time.  Appellant read each of his rights aloud,
stated he understood those rights, and initialed each one on the document.  Indeed, when appellant indicated he did not
understand what was going to happen next, the magistrate informed him the
detectives would take him to a juvenile facility and ask him to give a
statement, adding, A[y]ou
know now that you can if you want to, but if you do not want to, you don=t have
to.@  Appellant then gave his statement to the
detectives.  








In sum, appellant received the required magistrate
warnings before his second statement was recorded and was informed he could
choose not to speak with the detectives. 
Although, like Griffin, the magistrate in this case was
unaware of appellant=s earlier
oral statement, the magistrate=s opinion
here was that appellant=s
recorded statement was voluntary and there is no evidence to the contrary.  There is no evidence in the record that but
for the unrecorded statement, appellant would not have given the recorded
statement.  The trial court did not err
in admitting appellant=s second,
recorded oral statement into evidence. 
Accordingly, appellant=s first issue is overruled.

B.  Waiver of Rights

In his
second issue, appellant contends the trial court erred in admitting his
statements because the State failed to prove he knowingly, intelligently, and
voluntarily waived his rights.  Appellant
acknowledges that the record reflects the magistrate read the statutory
warnings to him and that he indicated his understanding of those warnings.  Appellant contends, however, that the
evidence is insufficient to establish that he knowingly, intelligently, and
voluntarily waived those rights.[9]   

Section
51.095(a)(5)(A) of the Family Code provides the statement of a child is
admissible if:

(5)       the
statement is made orally under circumstances described by Subsection (d) and
the statement is recorded by an electronic recording device, including a device
that records images, and:

(A)      before
making the statement, the child is given the warning described by Subdivision
(1)(A) by a magistrate, the warning is a part of the recording, and the child
knowingly, intelligently, and voluntarily waives each right stated in the
warning.

 

Tex.
Fam. Code ' 51.095(a)(5)(A).  The warnings required to be given by section
51.095(a)(1)(A) are as follows:








(i)  the child may remain silent and not make any
statement at all and that any statement that the child makes may be used in
evidence against the child;

(ii)  the child has the right to have an attorney
present to advise the child either prior to any questioning or during the
questioning;

(iii)  if the child is unable to employ an attorney,
the child has the right to have an attorney appointed to counsel with the child
before or during any interviews with peace officers or attorneys representing
the state; and 

(iv)  the child has the right to terminate the
interview at any time.

 

Tex.
Fam. Code ' 51.095(a)(1)(A).  

Article
38.22, section 3(a) of the Texas Code of Criminal Procedure provides that no
oral statement of an accused shall be admissible unless:

(2)  prior to the statement but during the recording the
accused is given the warning in Subsection (a) of Section 2 above and the
accused knowingly, intelligently, and voluntarily waives any rights set out in
the warning.

 

Tex.
Code Crim. Proc. Ann.
art. 38.22 (Vernon Supp. 2002).








The
language in section 51.095 of the Family Code is substantially the same as that
contained in article 38.22 of the Code of Criminal Procedure with the exception
that the Family Code requires that a magistrate administer the warnings to the
child.  In construing article 38.22, the
Court of Criminal Appeals has held that the law does not require an express
waiver of rights.  Rocha v. State,
16 S.W.3d 1, 12 (Tex. Crim. App. 2000). 
Here, appellant was read the required warnings twice, first by Ortiz and
then the magistrate.  During his meeting
with the magistrate, which was recorded, appellant indicated he understood his
rights, including his right to have an attorney present and to terminate the
interview at any time.  Appellant read
each of his rights aloud, stated he understood those rights, and initialed each
one on a piece of paper.  As noted, the
magistrate informed appellant, A[y]ou know now that you can [give a statement] if you want
to, but if you do not want to, you don=t have to.@ 
Following this, appellant proceeded to give his statement to the
detectives.  Also, appellant understood
he was being recorded and did not object. 
Based on this, the trial court=s finding
that appellant knowingly and intelligently waived his rights is supported by
sufficient evidence.  Appellant=s second
issue is overruled.

IV. 
Conclusion

In conclusion, we find appellant=s
recorded statement was properly admitted into evidence and the trial court did
not err in overruling appellant=s motion
to suppress regarding that statement. 
Also, assuming without deciding that the trial court improperly admitted
the testimony concerning appellant=s first,
unrecorded statement, we find any error was harmless under the circumstances of
this case.  Further, the record reflects
that appellant knowingly, intelligently, and voluntarily waived his statutory
rights. Accordingly, the judgment of the trial court is affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed July 29, 2004.

Panel
consists of Justices Anderson, Seymore, and Guzman.

 

 











[1]  Appellant=s father testified at the
suppression hearing that Coleman was more vague, telling them that the officers
wanted to clarify a discrepancy between something appellant told an officer and
something he told one of the children in the neighborhood.  





[2]  These warnings
included appellant=s right to remain silent and the fact he could be
tried as an adult.  





[3]  The State
argued on appeal that appellant had no standing to raise this issue because it
was a right belonging to appellant=s
parents.  Having found no merit in
appellant=s argument regarding a violation of the

 provision, we
do not address the State=s standing argument.   






[4]  See, e.g.,
Kendrick v. State, 942 S.W.2d 120, 125B26 (Tex.
App.CBeaumont 1997, no pet.) (finding statement admissible
because evidence corroborated child=s
guilt); Salazar v. State, 648 S.W.2d 421, 422 (Tex. App.CAustin 1983, no pet.) (same); Meza v. State,
543 S.W.2d 189, 191B92 (Tex. Civ. App.CAustin
1976, no pet.) (same).  In these cases
there was no finding that other provisions of the Family Code had been
violated.  





[5]  Section
52.025(b) states that a juvenile may be held at a juvenile processing office
only for the following:

 

(1) the return of the child to the custody of a person
under Section 52.02(a)(1);

(2) the completion of essential forms and records
required by the juvenile court or this title;

(3) the photographing and fingerprinting of the child
if otherwise authorized at the time of temporary detention by this title;

(4) the issuance of warnings to the child as required
or permitted by this title;  or

(5) the receipt of a statement by the child under
Section 51.095(a)(1), (2), (3), or (5).

 

Tex. Fam. Code ' 52.025(b).





[6]  Under Section
52.02(a), police are authorized to take the following actions if the juvenile
is not taken to a juvenile processing office:

 

(1) release the child to a parent, guardian,
custodian, or other responsible adult upon that person=s promise to bring the child before the juvenile court
as requested by the court; 

(2) bring the child before the office or official
designated by the juvenile board if there is probable cause to believe that the
child engaged in delinquent conduct, conduct indicating a need for supervision,
or conduct that violates a condition of probation imposed by the juvenile
court; 

(3) bring the child to a detention facility designated
by the juvenile board; 

(4) bring the child to a secure detention facility as
provided by section 51.12(j); 

(5) bring the child to a medical facility if the child
is believed to suffer from a serious physical condition or illness that
requires prompt treatment; or 

(6) dispose of the case without referral to the court
as authorized under section 52.03.  

 

Tex. Fam. Code ' 52.02(a).





[7]  Further, the provisions of Title 3
indicate the legislature intended that a juvenile officer make the initial
decision to subject a child to custodial interrogation.  See Roquemore, 60 S.W.3d at 867
(citing to Comer, 776 S.W.2d at 196). 





[8]  Beall=s testimony concerning the unrecorded statement
occupied approximately two pages of the reporter=s
record.  





[9]  The State
argued that appellant waived this issue for our review by failing to raise it
in the trial court.  Appellant asserts
that the State should not be allowed to contend it was somehow not on notice
that the issue in the trial court was whether appellant had knowingly,
intelligently, and voluntarily waived his statutory rights.  However, we need not decide whether appellant
did in fact waive the issue because we conclude there was sufficient evidence
that he knowingly, intelligently, and voluntarily waived his rights.