Harold Martin **LAIRD,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–93–01103–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 10, 1996.

Robert A. Morrow, Spring, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

FOWLER, Justice.

Appellant entered a plea of not guilty before the jury to the offense of capital murder. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.1994).[1] A jury convicted him. Because he was a juvenile certified to stand trial as an adult, the trial court assessed punishment at life in the Texas Department of Criminal Justice, Institutional Division. *See* TEX. PENAL CODE ANN. § 8.07(c) (Vernon 1996). Appellant brings five points of error, complaining the trial court erred by refusing to charge the jury on the lesser included offenses of involuntary manslaughter and murder; the trial court erred in admitting appellant's oral statement made while he was in illegal custody; and his automatic life sentence violates the Texas and United States Constitutions. We affirm.

## FACTS AND PRIOR POSTURE

On January 15, 1992, the bodies of Douglas Redd and Sharon Smith were discovered in Redd's trailer. Redd had been shot twice in the head and chest and suffered a blunt trauma to the head and Smith had suffered a gunshot wound to the head.

On January 16, 1992, appellant's mother called Detective Bockel to report she had just heard that Redd had been murdered and she suspected her son. She testified that she and appellant lived with Redd at one point, so Redd would have let appellant into his trailer. She also consented to a search of

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the penal code revision. *See* Acts 1993, 73rd Leg., ch. 900, § 1.18(b). There- fore, all references to the penal code are to the code in effect at the time the crime was committed.

appellant's room, where two guns were located.

Meanwhile, appellant and several others suspected of being involved in the murders went to Pennsylvania in hopes of staying with a relative of one of them. By the time they reached Pennsylvania, police in Houston had notified the police in Pennsylvania to be on the lookout for the suspects who were in one of their friend's cars. Police located the car and took appellant and three other suspects into custody in Pennsylvania. Appellant was placed in a separate holding cell at the jail because he was a juvenile. A Pennsylvania police officer, Corporal Garis, read appellant his rights, and told him he was not going to be asked any questions. Appellant hung his head and stated, "I know what I did. I'm sorry." Later, Detective Bockel faxed a runaway report to Pennsylvania authorizing appellant's arrest. He was then taken to a juvenile detention facility.

At trial testimony was presented showing that appellant went to Redd's trailer to get money and guns which he knew Redd had. He was able to get in because Redd knew him. Appellant and another man then beat Redd and a female companion unconscious by hitting them over the head with a baseball bat. Redd came to while they were still there. Appellant asked him if he knew appellant's mother and Redd said yes. Appellant then asked Redd if he knew appellant. Redd hesitated, said he did not know appellant or his mother. Appellant apologized for what he was about to do and then he shot Redd and the woman.

## POINTS OF ERROR

■ Appellant asserts in his first two points of error, that the trial court erred in denying his request to submit to the jury a charge on the lesser included offenses of involuntary manslaughter and murder. The trial court submitted only a charge on capital murder.[2] When deciding whether to submit an instruction on a lesser included offense, the trial court employs a two step analysis under *Royster v. State,* 622 S.W.2d 442

(Tex.Crim.App.1981). The first prong of the *Royster* test requires that the lesser included offense be within the proof necessary to establish the offense charged. *Id.* at 446. Both involuntary manslaughter and murder are lesser included offenses of capital murder. *Robertson v. State,* 871 S.W.2d 701, 706 (Tex.Crim.App.1993) (murder); *Navarro v. State,* 863 S.W.2d 191, 203 (Tex.App.—Austin 1993, pet. ref'd) (involuntary manslaughter). Thus, the first prong of the *Royster* test is met.

■ The second prong of the *Royster* test is whether there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim. App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (clarifying *Royster* as to the rational findings of the jury). In determining whether some evidence in the record supports the charge of involuntary manslaughter or murder, we review all the evidence presented at trial. *Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (op. on reh'g); *Bell v. State,* 693 S.W.2d 434, 442 (Tex.Crim.App.1985). The credibility of the evidence and whether it conflicts with other evidence is not to be considered. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App. 1992) (per curiam).

■ A person commits involuntary manslaughter when he recklessly causes the death of another. TEX. PENAL CODE ANN. § 19.04(a) (Vernon 1989). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (Vernon 1974). Thus, involuntary manslaughter occurs when the actor consciously disregards a risk created by his conduct. Before the judge would be required to submit involuntary manslaughter in the charge, the record must contain some evidence—whether weak, impeached or contradicted—that would permit a jury to ra-

---

**2.** A person commits capital murder if that person intentionally commits murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.1994).

tionally find that if appellant was guilty, he was guilty only of the lesser offense of involuntary manslaughter. *Jones v. State,* 900 S.W.2d 103, 105 (Tex.App.—Houston [14th Dist.] 1995, no pet.); *Evans v. State,* 781 S.W.2d 376, 378 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

Appellant asks us to consider the testimony of several people which he claims raises the issue of involuntary manslaughter. First he points to the testimony of Lisa Burleson, who said appellant told her he was standing twenty to twenty-five feet from Redd and he, "just stood back and closed his eyes and was moving his arms and fired." Burleson also stated that appellant said he had not expected anyone to be at home and that he did not go to the trailer intending to harm anyone. Finally, appellant directs our attention to his mother's testimony that appellant was a poor shot. He claims all of this testimony proves he acted without intent and at the most, recklessly.

■ However, we must consider the above testimony with the remainder of the evidence, including appellant's statement to Burleson that he apologized to Redd before he shot him. *See Navarro,* 863 S.W.2d at 205. If the statement is considered in the context of all the facts, Burleson's testimony shows, "That he (the appellant) was standing approximately twenty, twenty-five feet away. . . . And he told Douglas Redd he was sorry for what he was about to do. He just stood back and closed his eyes and was moving his arms and fired." Viewing the statement as a whole, we do not believe a jury could reasonably conclude appellant acted recklessly. Moreover, in order for a jury to rationally find appellant guilty of involuntary manslaughter but not capital murder, they would have to disregard the evidence of such intent—that appellant had lived with Redd, knew he collected guns, and was concerned that Redd could identify him. We do not believe a rational jury would disregard such evidence and consider it not to be probative of appellant's intent to murder Redd. Appellant's first point of error pertaining to the lesser included offense of involuntary manslaughter is overruled.

■ Next, we review the lesser included offense of murder. Since we have already decided that the first prong of the *Royster* test has been satisfied because murder is a lesser included offense of capital murder, *Robertson,* 871 S.W.2d at 706, we now turn to the second prong of the *Royster* test. A person commits murder if that person:

> Commits or attempts to commit a felony, other that manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b)(3). Under the second prong of the *Royster* test, appellant was entitled to a charge on the lesser offense of murder if there was some evidence in the record that would permit a jury rationally to find that appellant had not formulated an intent to rob Redd "before, or as" he killed him. *See White v. State,* 779 S.W.2d 809, 815 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990) (question in case of capital murder committed in course of robbery is whether jury would be justified in finding that defendant intended to take victim's property "before, or as" he murdered her); *see also Zimmerman v. State,* 860 S.W.2d 89, 93 (Tex. Crim.App.1993) (State proves murder in course of robbery where defendant formed intent to obtain or maintain control of the victim's property "either before or during" commission of murder). Regardless of the strength or weakness of the evidence, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given. *Saunders,* 840 S.W.2d at 391.

■ Section 19.03 of the penal code states that a person commits capital murder if he commits murder "in the course of committing" robbery. The Texas Court of Criminal Appeals defined "in the course of committing" an offense as conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *Garrett v. State,* 851 S.W.2d 853, 856 (Tex.Crim.

App.1993); *Robertson,* 871 S.W.2d at 706. In order for murder during a robbery to qualify as capital murder, the intent must be formed prior to or concurrent with the murder. *Garrett,* 851 S.W.2d at 856.

Appellant concedes there was a robbery, he just denies he was involved. Appellant suggests several reasons the jury could have believed he was not involved. First, he argues that nobody ever saw him steal property from Redd's trailer. Second, he alleges two witnesses saw the other co-defendants carry stolen property from Redd's home, but they did not see him carry anything. Third, he argues that just because he told one of these witnesses on the way to Redd's house that he was going to get some money does not provide any evidence of robbery. Fourth, he contends that testimony was presented showing that when the other co-defendants went on a shopping spree at a mall, inferring they had money from the robbery to spend, he did not buy anything. This testimony, he maintains, shows he did not rob Redd. Finally, he points to the testimony that he did not expect anyone to be in the trailer and, therefore, he did not have the requisite intent to commit robbery. He also claims that the presence of his fingerprints on the gun cabinet proved nothing because they could have been left from when he resided at the trailer. Appellant contends that this evidence could lead a jury to rationally believe he did not participate with his friends in the robbery, if the trial court would have included the lesser included offense of murder in the charge.

Intent may be inferred from the actions or conduct of the appellant. *McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App. 1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). None of this testimony amounts to evidence that before, or as he shot Redd, appellant had no intent to steal anything belonging to Redd. Before a jury could rationally find appellant guilty of the lesser offense of murder and not capital murder, it would have to disregard the evidence showing that appellant went to Redd's trailer intending to take money and guns. This evidence, in addition to the other admissions of guilt that appellant made in regard

to killing and robbing Redd, could lead a rational juror to conclude appellant intended to rob Redd before or after he shot him. *See Upton v. State,* 853 S.W.2d 548, 552 (Tex. Crim.App.1993). A rational jury would not disregard such evidence as probative of appellant's intent to steal from Redd before or as he murdered him. Appellant's second point of error is overruled.

In appellant's third point of error, he argues the trial court erred by admitting Corporal Garis' testimony that while appellant was in custody he stated, "I know what I did. I'm sorry." Reading appellant's point of error liberally, he lists three reasons why the trial judge erred in letting Corporal Davis testify about the confession. First he claims it did not lead to inculpatory evidence, second, it was given while he was illegally detained because he was in an adult cell, rather than at a juvenile processing office, and third, the Pennsylvania police held him too long before taking him to juvenile authorities.

Appellant was arrested in Pennsylvania on January 19, 1992 and taken to the police station at about 6:00 p.m. He was kept in a separate cell because Pennsylvania law required that for juveniles. At some point after appellant was brought to the State College Police Station in Pennsylvania, a Pennsylvania investigator notified their Juvenile Probation Department. The Juvenile Probation Department informed the investigator the facility would not take appellant until they received the appropriate paperwork from Texas. At 6:52 p.m., Corporal Garis read appellant his rights and informed appellant he would not be questioning him because he knew what appellant had done. Appellant then hung his head and said, "I know I did it. I'm sorry." There was some delay in obtaining appellant's arrest warrant from Houston because the chief juvenile prosecutor was out ill. Instead, a runaway report signed by appellant's mother was faxed to Pennsylvania at 11:57 p.m. The record does not reflect when appellant was taken to the juvenile detention center, but it appears that it was some time close to midnight.

At a motion to suppress hearing Corporal Garis testified that Pennsylvania law re-

quires that a juvenile be kept in a separate cell. He also said Pennsylvania does not provide for the designation of a juvenile processing office as Texas does, the juvenile merely needs to be kept in a separate cell by himself while paper work is being processed. At the close of the hearing the trial judge ruled that the oral statement was admissible.

▉ In reviewing a decision on a motion to suppress, the appellate court must review the evidence in the light most favorable to the trial court's ruling. *Reyes v. State,* 899 S.W.2d 319, 322 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *State v. Hamlin,* 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist] 1994, pet. ref'd). At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility, and the court's findings will not be disturbed absent a clear abuse of discretion. *Meek v. State,* 790 S.W.2d 618, 620 (Tex.Crim.App. 1990); *Reyes,* 899 S.W.2d at 322.

The trial court made findings of fact and found (1) there was probable cause to arrest appellant; (2) there was no unnecessary delay on the part of the Pennsylvania police officers in transferring appellant from their custody to that of juvenile authorities; (3) the delay was due to the length of time it took to receive proper written authorization from Houston; (4) appellant's arrest was warrantless; (5) Harris County Sheriff Detective Bockel made timely, proper efforts to obtain a warrant; and (6) the reason for the delay was to obtain the necessary paperwork.

▉ We turn first to appellant's complaint that the oral confession should not have been admitted because it did not lead to inculpatory evidence. Appellant's only authority for this proposition is *Littlefield v. State,* 720 S.W.2d 254 (Tex.App.—Beaumont 1986, pet ref'd). *Littlefield* allowed a juvenile's oral confession into evidence because the confession led to evidence that established his guilt. The opinion relied on section 51.09(b)(2) of the Family Code. However, *Littlefield* and section 51.09(b)(2) of the Family Code do not apply to this case because appellant's confession was not made as a result of custodial interrogation. In fact, Corporal Garis testified that he pointedly told appellant he would not question him. In

such a situation, section 51.09(d)(2) of the Family Code applies. This section allows an oral statement to be admitted if it is not in response to custodial interrogation. TEX. FAM.CODE ANN. § 51.09(d)(2) (Vernon 1996).

Appellant's second complaint is that the Pennsylvania authorities were holding him in an unauthorized place. Appellant does not contest that Pennsylvania had reasonable grounds to take him into custody. Relying on section 52.02 of the Texas Family Code, which sets out the proper procedures for handling a juvenile after he has been taken into custody, appellant complains that he was illegally held because he was not in a properly designated juvenile detention center. Section 52.02 provides:

(a) A person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025 of this code, shall do one of the following:

(1) release the child to a parent, guardian, custodian of the child, or other responsible adult upon that person's promise to bring the child before the juvenile court as requested by the court;

(2) bring the child before the office or official designated by the juvenile court if there is probably cause to believe that the child engaged in delinquent conduct or conduct indicating a need for supervision;

(3) bring the child to a detention facility designated by the juvenile court;

(4) bring the child to a medical facility if the child is believed to suffer from a serious physical condition or illness that requires prompt treatment; or

(5) dispose of the case under Section 52.03 of this code.

TEX. FAM.CODE ANN. § 52.02(a)(3) (Vernon 1996).

More pertinent to appellant's claim, although he does not cite it, is section 52.025, which allows a juvenile court to designate a police station or other office as a place where arrested juveniles can be taken for tempo-

rary detention before they are taken to juvenile authorities. TEX. FAM.CODE ANN. § 52.025(a).

This case presents an interesting question on the issue of where a juvenile may be held because appellant was arrested in Pennsylvania, not Texas. Uncontroverted evidence presented to the trial judge showed that Pennsylvania does not have a provision similar to 52.025 or 52.02(a)(2). In fact, Corporal Garis testified that he did precisely what Pennsylvania law required of him, which was that he place appellant in a separate cell and not interrogate him without a parent present. We refuse to hold that appellant's detention, which was lawful under Pennsylvania law, was nonetheless unlawful because Pennsylvania authorities did not follow Texas law concerning the detention of juveniles.

Citing to both *Littlefield* and *Comer v. State,* 776 S.W.2d 191 (Tex.Crim.App.1989), appellant's final contention under point of error three is that he was detained too long and thus the detention was illegal. The problem with appellant's argument is that appellant spontaneously uttered his incriminating remarks after he had been at the station for only 45 minutes. Clearly, at this point, appellant was being detained lawfully. Whether his detention became unlawful after several more hours is another issue not before us.[3] In any event, the significant fact for purposes of our review is that appellant was lawfully detained when he made his remark. *See Townsley v. State,* 652 S.W.2d 791, 797 (Tex.Crim.App.1983).

In sum, taking into account all the facts and viewing them most favorably to the trial court's ruling, we find the trial court did not err in denying the motion to suppress and in admitting appellant's oral statement at trial. Appellant's third point of error is overruled.

In appellant's fourth and fifth points of error, he asserts his automatic life sentence mandated by Article 37.071 of the Texas Code of Criminal Procedure violates the Texas and United States Constitutions. Specifically, he claims the automatic life sentence violates his right to a jury, constitutes cruel

and unusual punishment, and denies his rights to due process and equal protection under the laws.

■ Under the capital murder scheme in Texas a defendant may receive one of two punishments if convicted: death or life imprisonment. TEX. PENAL CODE ANN. § 12.31 (Vernon 1996). A juvenile offender who has been certified to stand trial for capital murder as an adult may not be sentenced to death and thus must be sentenced to the lesser punishment, life imprisonment. TEX. PENAL CODE ANN. § 8.07(c) (Vernon 1996). Presumably, the law statutorily considers youth in mitigation of the death penalty and thereby mandates the lesser of the two possible punishments for capital murder. *Prater v. State,* 903 S.W.2d 57, 60 (Tex.App.—Fort Worth 1995, no pet.).

The *Prater* court stated with regard to offering mitigating evidence:

> It may be said, then, that when the State waives the death penalty in a capital murder case, it has conceded the punishment questions in the same way the State may concede an enhancement paragraph or count and offer no evidence on that matter. When the enhancement element is waived, there is no issue in controversy regarding enhancement of punishment and no evidence is required. There is no need to offer evidence of mitigating factors when no greater punishment than the minimum punishment permitted for the offense may be imposed.

*Id.* at 60. It cannot be said, therefore, that Article 37.071, section 1, is unconstitutional for failure to avoid arbitrary and capricious infliction of punishment because a juvenile automatically receives life imprisonment when found guilty of capital murder. Nor can it be said that it is unconstitutional for failure to avoid cruel and unusual punishment. *Id.; see also Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (mandatory life sentence under prior Texas recidivist statute not cruel and unusual punishment); *Alvarado v. State,* 596 S.W.2d

---

**3.** We have not been cited any Pennsylvania law on this issue but Texas law apparently contemplates that a juvenile could be held as long as six hours waiting for papers to be processed before he is taken to juvenile authorities. TEX. FAM.CODE ANN. § 52.025(d).

904 (Tex.Crim.App. [Panel Op.] 1980); *Armendariz v. State,* 529 S.W.2d 525 (Tex. Crim.App.1975).

A defendant in a criminal case has no *constitutional* right to have the jury assess his punishment. *Allen v. State,* 552 S.W.2d 843, 847 (Tex.Crim.App.1977); *Emerson v. State,* 476 S.W.2d 686 (Tex.Crim.App. 1972). He does, however, have a *statutory* right to have the jury assess his punishment. *Washington v. State,* 677 S.W.2d 524, 527 (Tex.Crim.App.1984). The legislature may alter or abolish the procedure whereby the jury assesses punishment, within the bounds of due process and other constitutional strictures. *Ex parte Moser,* 602 S.W.2d 530, 533 (Tex.Crim.App.1980). Therefore, equal protection and due process rights are not violated by Article 37.071. *Id.* Appellant's fourth and fifth points of error are overruled.

The judgment of the trial court is affirmed.