Affirmed and Memorandum Opinion filed February 19, 2008








Affirmed and Memorandum Opinion filed February 19, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00307-CR

_______________

 

GILBERT RODRIGUEZ IV, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 1052781

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Gilbert
Rodriguez IV, of capital murder and the trial court imposed a life sentence.  Appellant raises
three issues on appeal, claiming that: (1) the trial court erred by permitting
the State to impeach him with an impermissible hearsay telephone conversation;
(2) the trial court erroneously allowed the State to question his wife after
she invoked the husband-wife privilege; and (3) the Texas statutory scheme is
unconstitutional because it permits the State to seek a life sentence without
parole.  We affirm.

 

 








Background

Because appellant
has not challenged the sufficiency of the evidence, we discuss the facts only
briefly here to provide context and then as necessary throughout the opinion to
address appellant=s issues.  

In the early
morning hours of January 7, 2006, appellant, his wife Samaria Rodriguez, Julio
Falcon, and Falcon=s former girlfriend, 14-year-old Xochitl
Diaz, were arguing at appellant=s house about an alleged sexual
relationship between appellant and Diaz.  Appellant and Falcon decided to Atake care of@ Diaz.  Diaz was
shoved into the trunk of appellant=s car and
appellant and Falcon drove off.  Diaz escaped from the trunk but was
immediately captured and thrown back into the trunk.  Later, appellant and
Falcon stopped the car at the intersection of a subdivision.  As Diaz was
laying in the street, she was kicked numerous times, shot twice in the head,
and then left dead and partially clothed in the street.  At trial, there was
conflicting evidence as to whether appellant or Falcon fired the shots that
killed Diaz.

                                                        Analysis

1.       Hearsay

In his first
issue, appellant contends the trial court erred by permitting the State to
impeach his co-defendant Falcon with prior inconsistent statements regarding
the nature of appellant=s participation in Diaz=s murder.  At
trial, Falcon claimed that he shot Diaz; however, during a jailhouse telephone
conversation with his aunt recorded months before trial, Falcon denied having
shot Diaz himself and claimed he was Ajust a party@ to the shooting.

Appellant argues
that Falcon never denied making the prior statements when confronted by the
State during trial;
instead, Falcon insisted he did not remember making them.  Appellant also
claims that the State impermissibly used Falcon as a Astrawman@ solely to impeach Falcon with
otherwise inadmissible statements on a collateral matter when those statements
were not mentioned on direct examination.








We review a trial court=s evidentiary ruling for abuse of
discretion.  Hammons v. State, 239 S.W.3d 798, 806 (Tex. Crim. App.
2007).  As long as the trial court=s ruling is within the zone of
reasonable disagreement, we will not intercede.  Lopez v. State, 86
S.W.3d 228, 230 (Tex. Crim. App. 2002).  A party may impeach a witness with
evidence of a prior inconsistent statement if the party first presents the
witness with the existence of the statement; describes the details and
circumstances surrounding the statement; and then gives the witness an
opportunity to explain or deny the statement.  Tex. R. Evid. 613(a).  If the admission is partial,
qualified, or otherwise equivocal, or if the witness disclaims any memory of
making the statement, then the prior statement is admissible for impeachment
purposes.  Ruth v. State, 167 S.W.3d 560, 566 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d); see also Tex. R. Evid. 613(a); McGary v. State, 750
S.W.2d 782, 786 (Tex. Crim. App. 1988).

The defense called Falcon as a
witness.  On direct examination, Falcon asserted that appellant did not know of
Falcon=s plan to kidnap and kill Diaz. 
During cross-examination, Falcon again stated that appellant was an unwilling
participant who knew nothing about Falcon=s plan to kidnap and shoot Diaz.  The
State then cross-examined Falcon about statements he made while in jail in February 2007
during a recorded telephone conversation with his aunt.  The following exchange
occurred before the trial court allowed the State to play a tape of the
telephone conversation:

THE STATE: And you
spoke to her after you took the plea bargain for B that included a
plea of guilty and a capital life sentence, correct?

WITNESS: Yes, ma=am.

THE STATE: And do
you recall B and that was on February 2nd, 2007, right?

WITNESS: I think
so.

THE STATE: You
know that your phone calls there at the jail are recorded?

WITNESS: Yeah, I
know.








THE STATE: And in
that telephone call to her on February 2nd, 2007, you told her that you were
taking the rap for both you and [appellant] because there was no use in both
you going down.  Do you remember that?

WITNESS: I think. 
I don=t know.  Not
really sure.

THE STATE: You
told her that you weren=t even the shooter, that you were just a
party to it.  Do you remember telling her that?

WITNESS: No, I don=t.

*                  *                  *

THE STATE: And
that=s what you told
your auntie, isn=t it?  You said the reason you pled guilty
was because you had something to do with it even though you weren=t the shooter; isn=t that right?

WITNESS: No, I don=t recall saying
that.

THE STATE: Okay. 
But it would be on that telephone call that you said you did make, if we had
that, right?

WITNESS: I guess.

This exchange
confirms that Falcon was told the contents of his prior inconsistent statements,
the time and place they were made, and to whom they were made. The State
provided Falcon with an opportunity to admit, explain, or deny the prior
statements.  Falcon=s responses were equivocal.  Falcon
repeatedly responded that he could not remember making the prior statements. 
This equivocation establishes a sufficient basis to admit Falcon=s prior
statements.  See Ruth, 167 S.W.3d at 566. 








Appellant also
contends the State Abootstrapped@ the hearsay
telephone conversation into evidence to impeach Falcon.  Appellant argues that
the February 2007 telephone conversation was never mentioned by the defense on
direct examination, and was only developed through cross-examination regarding
an otherwise inadmissible collateral matter. This argument is not preserved
because appellant failed to make this argument in the trial court.  In any
event, nothing in Rule 613(a) requires a witness to discuss his prior
inconsistent statements on direct examination to permit impeachment on
cross-examination.  See Tex. R. Evid.
613(a).  Appellant=s further argument that Falcon=s statements
concern a collateral matter is without merit and is not supported by the
authorities cited in his brief.

Appellant
misplaces his reliance on Pruitt v. State, 770 S.W.2d 909, 910-11 (Tex.
App.CFort Worth 1989,
pet. ref=d), in which the
court held the State may not avoid the hearsay rule by calling a hostile
witness to elicit otherwise inadmissible impeachment testimony. Appellant
likewise misplaces his reliance on Sills v. State, 846 S.W.2d 392,
395-96 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d), in which the
court rejected the tactic of calling a witness on direct examination and
admitting his written statement to impeach him as an impermissible Aback-door@ effort to
introduce facts the witness repeatedly had refused to testify about at trial. 
Both cases are readily distinguishable because the State chose not to call
Falcon as a witness, knowing he would be hostile to the State.  Rather,
appellant called Falcon as a witness and the State cross-examined him.  When
Falcon equivocated during cross-examination about a prior statement that
described appellant=s role in Diaz=s murder far
differently from the description offered on direct examination, the State was
entitled to impeach Falcon.  Appellant cannot accurately assert that the State
called Falcon solely to impeach him.  The State did not call Falcon at all.

Lastly, appellant
relies on Shipman v. State, 604 S.W.2d 182, 183 (Tex. Crim. App. 1980). 
There, the Court of Criminal Appeals held that when a witness is cross‑examined
on a collateral matter, the cross‑examining party may not then contradict
the witness=s answer. Id.  A matter is collateral if the cross‑examining
party would not be entitled to prove that matter as part of his case tending to
establish his plea.  Id. at 184. 

Here, the State
did not cross-examine Falcon on a collateral matter.  Instead, the State questioned
him regarding appellant=s participation in the murder of Diaz,
which is the central issue in the case.  The trial court did not err in
allowing the State to impeach Falcon with his prior inconsistent statements.  

We overrule
appellant=s first issue.








2.       Husband-Wife Privilege

In his second
issue, appellant argues the trial court erroneously permitted the State to
question his wife as a witness.  Appellant contends that his wife invoked the
husband-wife privilege when she responded in the affirmative to the State=s question, AWould it be fair
to say you don=t really want to be here testifying against your
husband? Is that fair to say?@      In a criminal case, the accused=s spouse has a
privilege not to be called as a witness for the State; however, she is not
prohibited from testifying voluntarily for the State.  Tex. R. Evid.
504(b)(1).  The spouse=s privilege not to be called as a witness
for the State does not apply in any proceeding in which the accused is charged
with a crime against a minor. Tex. R. Evid. 504(b)(4)(A); see also Ludwig v.
State, 931 S.W.2d 239, 244 (Tex. Crim. App. 1996); Hernandez v. State,
205 S.W.3d 555, 559 (Tex. App.CAmarillo 2006, pet. ref=d).  

Appellant=s invocation of the spousal privilege
provides no basis for reversal.  The spousal privilege is inapplicable under
Rule 504(b)(4)(A) because appellant was charged with the capital murder of
Diaz, who was 14 years old at the time of the murder and therefore a minor. 
Because appellant=s wife could not claim a privilege, the trial court did not
err by permitting
the State to call appellant=s wife as a witness.   Additionally, although the
defense initially objected to the State calling appellant=s wife as a
witness based on spousal privilege, the defense withdrew that objection before
his wife was called.  Appellant provides no authority to establish that the
trial court had a duty to act sua sponte to prohibit the State from
questioning his wife.  

We overrule appellant=s second issue.

3.         Sentencing








In his third issue, appellant equates
the Texas statutory scheme permitting the State to seek a life sentence without
parole in a capital murder case with a death sentence that bypasses (1) the
Texas statutory provision allowing only a jury to assess a death sentence; (2)
a sentencing hearing; (3) a capital defendant=s right to present mitigating
evidence to avoid a death sentence; and (4) the right to have the mitigating
issue decided by a jury.[1]

 A defendant in a criminal case has no
constitutional right to have the jury assess his punishment.  Laird v. State,
933 S.W.2d 707, 715 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). However, Texas provides a
statutory right to have the jury assess punishment.  Id.  The
legislature may alter or abolish the procedure whereby the jury assesses
punishment within the bounds of due process and other constitutional
strictures.  Id.  Under Texas law, an automatic life sentence is mandatory
when the State does not seek imposition of the death penalty for a capital
offense.  See Tex. Penal Code Ann. ' 12.31(a) (Vernon
2005); see also Tex. Code Crim. Proc. Ann. art. 37.071, ' 1 (Vernon 2006). 
When the State waives the death penalty in a capital murder case, it has
conceded the punishment question and there is no need for evidence of
mitigating factors because no greater punishment than the minimum punishment
permitted for the offense may be imposed.  See Laird, 933 S.W.2d at 714.


A sentencing
scheme that calls for an automatic sentence of life imprisonment, rather than
an individualized punishment determination, does not violate the Constitution. 
See Harmelin v. Michigan, 501 U.S. 957, 995 (1991).  It is
well-established that the automatic life sentencing provision of the Texas
capital sentencing framework is constitutional.  See, e.g., Cienfuegos
v. State, 113 S.W.3d 481, 495-96 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d) (imposition of automatic life sentence
for conviction as a party to capital murder does not offend Constitution); Barnes
v. State, 56 S.W.3d 221, 239 (Tex. App.CFort Worth 2001,
pet. ref=d) (imposition of
automatic life sentence on juvenile defendant is not unconstitutional); Laird,
933 S.W.2d at 714-15 (same).








Appellant cites no relevant authority
supporting his argument.  Further, there is no authority to substantiate his
claim that a sentence of life imprisonment without parole is equivalent to a
death sentence that can be assessed only by a jury.  The United States Supreme
Court explained that there is a qualitative difference between the death
penalty and all other forms of criminal punishment because the death penalty is
irrevocable.  See Harmelin, 501 U.S. at 995.  Because life imprisonment
differs from a death sentence, there is no right to an individualized
punishment determination with respect to a life sentence.  See id.  Nor
is there any mitigating issue for a jury to decide.  And because there is no
mitigating issue, there is no need to present mitigating evidence.  Appellant
received the minimum sentence of life imprisonment.  Therefore, we overrule
appellant=s third issue and affirm the trial court=s judgment.

 

 

 

/s/        William
J. Boyce

Justice

 

 

Judgment rendered and Memorandum Opinion filed February 19,
2008.

Panel consists of Chief Justice Hedges, Justices Anderson,
and Boyce.

Do not publish C Tex.
R. App. P. 47.2(b).

 

 

 

 

 

 

 









[1]           Because appellant does not argue or provide
authority to establish that his protection under the Texas Constitution differs
from or exceeds that provided to him by the United States Constitution, we need
not address his state constitutional claim.  See Arnold v. State, 873
S.W.2d 27, 33 (Tex. Crim. App. 1993).