Opinion filed January 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 30,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00171-CR

                                                    __________

 

                                     WILMER LEE COBB, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR31750

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
jury convicted Wilmer Lee Cobb of the offense of capital murder, and the trial
court assessed punishment by operation of law at confinement for life.  We
affirm.  

Appellant
presents four issues for review.  In the first issue, he makes a limitations
argument with respect to the robbery portion of the capital murder indictment. 
He challenges the factual sufficiency of the evidence in his second issue.  In
the third and fourth issues, appellant contends that his rights to equal
protection and due process were violated by the automatic imposition of a life
sentence without a punishment hearing.  








                                                                     Limitations

Appellant
argues in his first issue that the trial court erred in rejecting his defense
of limitations as to the robbery portion of the indictment.  Appellant was
indicted on April 5, 2006, for the offense of capital murder.  The indictment alleged
that, on September 4, 1987, appellant intentionally caused the death of Verna
Peace by shooting her with a firearm in the course of committing and attempting
to commit the offense of robbery.  Although murder and capital murder have no
limitation period, the offense of robbery has a five-year limitation period.  See
Tex. Code Crim. Proc. Ann. art.
12.01(1)(A), (4)(A) (Vernon Supp. 2008); Demouchette v. State, 731
S.W.2d 75, 80 (Tex. Crim. App. 1986).  Appellant contends that limitations had
run for the offense of robbery and that, therefore, appellant could not be
charged with capital murder in which robbery was alleged as the offense during
which the murder occurred.  

We
disagree with appellant=s
contention.  Appellant was indicted for and convicted of capital murder, not
robbery.  The underlying robbery, for which limitations had run, and the murder
merged into one offense:  capital murder, for which there is no limitation
period.  See Graves v. State, 795 S.W.2d 185 (Tex. Crim. App. 1990)
(applying longer limitation period for felony aggregated theft offense even
though limitations had run on underlying misdemeanor theft offenses). 
Appellant=s first
issue is overruled.  

                                                               Factual
Sufficiency

In
the second issue, appellant contends that the evidence is factually
insufficient to prove that he committed the offense.  To determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App.
2006); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  The
record shows that the jury was charged on the law of parties.  Evidence is
sufficient to support a conviction under the law of parties where the defendant
is physically present at the commission of the offense and encourages the
commission of the offense either by words or other agreement.  Beier v.
State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).  








The
record shows that the victim was working at the Town & Country convenience
store on the night of September 4, 1987, when she was shot three times during a
robbery in which $185.84 was stolen from the store=s cash register.  The victim, who would have
died quickly from the gunshot wounds that she suffered, was found lying
facedown in a pool of blood.  This crime remained unsolved until J.D. Luckie,
an investigator for the district attorney=s
office, picked the case up as a cold case in 2005.  Appellant was indicted in
2006.

Several
witnesses came forward with information relating to appellant=s involvement.  Jerry Allen
Pennington testified that he went to the store around 11:00 on the night of the
offense and purchased a few items.  When he left, he saw appellant sitting in a
car at the gas pump.  Appellant and at least two other men were Ahuddled up@ in the car.  Pennington
said the car belonged to ARegina
Cobb.@  When
Pennington told appellant he had seen him at the store, appellant kept trying
to convince Pennington that it was about 9:00 p.m., but Pennington testified
that he was not in town at that time.  Pennington was sure about the time.  

Shortly
after 11:00 that night, Ann Marie Frost and Lynette Rae Langham left Frost=s house to make a quick
trip to the store.  As they pulled up to the store, they noticed a vehicle
parked on the dark side of the building but not in a parking spot.  The vehicle=s lights were pointed out,
which seemed odd.  Frost described the car as an older model, large blue car
with either a white or a light blue top; Langham described the car as a big
blue car with a white roof.  Frost saw a male figure in the shadows between the
car and the dumpster.  Langham saw motion by the dumpster, and then she saw the
driver get back into the car.  Langham said that the passenger had something in
his hand and that somebody could also have been in the back.

Frost
and Langham pulled up and parked in front of the store.  Langham walked up to
the door, opened it, and started inside when she saw the victim lying on the
floor with blood around her face and head.  Langham said the victim=s Ahand was twitching.@  After Langham turned around, came back, and
said, ADon=t go inside,@  Frost got out of the car
and went to the door.  Frost observed the victim lying facedown on the floor;
the victim was not moving.  Langham used the store=s pay phone to notify the authorities.

Regina
Rogers Cobb, appellant=s
estranged wife, testified that she owned a blue Grand Prix with a white vinyl
top and that, on the night of the offense, her boyfriend (Zane Hughes) left in
her car around 9:00 and did not return until 2:00 or 3:00 in the morning. 
According to Regina, Hughes had no money or drugs when he left, but when he
returned, Hughes had both money and drugs.








Julius
Edward Jones and appellant were at the same club later that night when an
investigator from the sheriff=s
department asked Jones if he would come try to identify Asome black lady.@ 
Jones followed the investigator but could not identify the woman, who was in a
body bag.  When Jones returned to the club, appellant immediately asked Jones
what the sheriff=s
department wanted.  Jones replied, A[T]hey
wanted us to go out and see could we identify some black lady that got killed
out on the highway.@ 
Although Jones did not say or know what highway or how the woman had died,
appellant responded, AThat=s Sugar Junior=s sister.@  The record shows that the
victim=s brother,
Milburn Sanders Jr., was nicknamed Sugar Junior.  Appellant left, went to
Sanders=s house, told
Sanders that he saw police cars and ambulances at the store when he passed by
earlier, and advised Sanders that he might need to call the sheriff=s office Aand see what=s going on.@

James
H. Lister III testified that, on September 5 or 6, 1987, appellant brought a
pistol to Lister and pawned it.  The pistol Awas
either a .38 or a .357@
according to Lister.  Other testimony showed that the spent bullets recovered
from the victim=s body
and from the scene were .38 caliber  and were fired from a .38 caliber class of
weapon, which includes a .357 Magnum.

The
State also called three witnesses to whom appellant had made admissions.  The
first of these witnesses was Raymente Hutchison, a good friend of appellant=s son.  Hutchison testified
that appellant had boasted over and over again that Ahe had gotten away with a robbery and murder.@  The second such witness
was Lonnie Flowers, who testified that appellant admitted taking part in this
offense after Flowers confronted him with information that Flowers had received
from a third person indicating that appellant and Zane Hughes had stolen this
person=s pistol and
killed the victim.  According to Flowers, appellant told him that, when they
went out to the store, they did not go to the store with the intent to kill
anyone but that the Agun
went off and we just had to go ahead and finish and do what we had to do.@








Finally,
the State called J.D. Luckie, who picked appellant up in Amarillo after the
indictment was handed down in this case.  Appellant asked Luckie why he was
bringing him back to Midland.  Luckie told him that it was for a capital
murder.  Appellant said, AYou
mean Verna Peace murder.@ 
During the trip, appellant continued to question the investigators about what
they knew about the case and tried to convince them that he could not be
convicted because there were no fingerprints, photos, or other evidence of that
type.  Luckie testified on rebuttal that appellant had confessed that he was
involved in the victim=s
murder: AHe said he
sat up all night long trying to figure out what offenses he had done that the
Statute of Limitations hadn=t
run on yet, and he said Verna Peace was the only one he could think of.@

Appellant
testified and denied having any involvement in this offense.  Appellant
testified that he drove past the store before midnight and saw police cars. 
Appellant also testified that Flowers lied, that Luckie lied, that Lister lied,
that Pennington lied, that Jones lied, and that Hutchison lied.

After
reviewing all of the evidence in a neutral light, we cannot hold that the
evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or that the verdict is against the great weight and
preponderance of the conflicting evidence.  Appellant=s second issue is overruled.  

                                                     Constitutionality
of Punishment

In
the third issue, appellant asserts that the lack of a punishment hearing and
the imposition of an automatic life sentence pursuant to Tex. Code Crim. Proc. Ann. art. 37.071
(Vernon 2006) violated his right to equal protection of the law.  In the fourth
issue, appellant contends that he was denied due process of law when he was
denied a hearing on punishment.  Similar arguments have been made and rejected
by the courts of this State.  Laird v. State, 933 S.W.2d 707, 714-15
(Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d);
Prater v. State, 903 S.W.2d 57, 60 (Tex. App.CFort Worth 1995, no pet.).  We agree with
the reasoning and the authorities cited in Laird and Prater. 
Appellant=s third and
fourth issues are overruled.  

The
judgment of the trial court is affirmed.  

 

 

JIM R. WRIGHT

CHIEF JUSTICE

January 30, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.