**Opinion filed January 30, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00171-CR

_____

**WILMER LEE COBB, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR31750**

## M E M O R A N D U M   O P I N I O N

The jury convicted Wilmer Lee Cobb of the offense of capital murder, and the trial court assessed punishment by operation of law at confinement for life. We affirm.

Appellant presents four issues for review. In the first issue, he makes a limitations argument with respect to the robbery portion of the capital murder indictment. He challenges the factual sufficiency of the evidence in his second issue. In the third and fourth issues, appellant contends that his rights to equal protection and due process were violated by the automatic imposition of a life sentence without a punishment hearing.

*Limitations*

Appellant argues in his first issue that the trial court erred in rejecting his defense of limitations as to the robbery portion of the indictment. Appellant was indicted on April 5, 2006, for the offense of capital murder. The indictment alleged that, on September 4, 1987, appellant intentionally caused the death of Verna Peace by shooting her with a firearm in the course of committing and attempting to commit the offense of robbery. Although murder and capital murder have no limitation period, the offense of robbery has a five-year limitation period. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(A), (4)(A) (Vernon Supp. 2008); *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986). Appellant contends that limitations had run for the offense of robbery and that, therefore, appellant could not be charged with capital murder in which robbery was alleged as the offense during which the murder occurred.

We disagree with appellant's contention. Appellant was indicted for and convicted of capital murder, not robbery. The underlying robbery, for which limitations had run, and the murder merged into one offense: capital murder, for which there is no limitation period. *See Graves v. State*, 795 S.W.2d 185 (Tex. Crim. App. 1990) (applying longer limitation period for felony aggregated theft offense even though limitations had run on underlying misdemeanor theft offenses). Appellant's first issue is overruled.

*Factual Sufficiency*

In the second issue, appellant contends that the evidence is factually insufficient to prove that he committed the offense. To determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The record shows that the jury was charged on the law of parties. Evidence is sufficient to support a conviction under the law of parties where the defendant is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).

The record shows that the victim was working at the Town & Country convenience store on the night of September 4, 1987, when she was shot three times during a robbery in which $185.84 was stolen from the store's cash register. The victim, who would have died quickly from the gunshot wounds that she suffered, was found lying facedown in a pool of blood. This crime remained unsolved until J.D. Luckie, an investigator for the district attorney's office, picked the case up as a cold case in 2005. Appellant was indicted in 2006.

Several witnesses came forward with information relating to appellant's involvement. Jerry Allen Pennington testified that he went to the store around 11:00 on the night of the offense and purchased a few items. When he left, he saw appellant sitting in a car at the gas pump. Appellant and at least two other men were "huddled up" in the car. Pennington said the car belonged to "Regina Cobb." When Pennington told appellant he had seen him at the store, appellant kept trying to convince Pennington that it was about 9:00 p.m., but Pennington testified that he was not in town at that time. Pennington was sure about the time.

Shortly after 11:00 that night, Ann Marie Frost and Lynette Rae Langham left Frost's house to make a quick trip to the store. As they pulled up to the store, they noticed a vehicle parked on the dark side of the building but not in a parking spot. The vehicle's lights were pointed out, which seemed odd. Frost described the car as an older model, large blue car with either a white or a light blue top; Langham described the car as a big blue car with a white roof. Frost saw a male figure in the shadows between the car and the dumpster. Langham saw motion by the dumpster, and then she saw the driver get back into the car. Langham said that the passenger had something in his hand and that somebody could also have been in the back.

Frost and Langham pulled up and parked in front of the store. Langham walked up to the door, opened it, and started inside when she saw the victim lying on the floor with blood around her face and head. Langham said the victim's "hand was twitching." After Langham turned around, came back, and said, "Don't go inside," Frost got out of the car and went to the door. Frost observed the victim lying facedown on the floor; the victim was not moving. Langham used the store's pay phone to notify the authorities.

Regina Rogers Cobb, appellant's estranged wife, testified that she owned a blue Grand Prix with a white vinyl top and that, on the night of the offense, her boyfriend (Zane Hughes) left in her car around 9:00 and did not return until 2:00 or 3:00 in the morning. According to Regina, Hughes had no money or drugs when he left, but when he returned, Hughes had both money and drugs.

3

Julius Edward Jones and appellant were at the same club later that night when an investigator from the sheriff's department asked Jones if he would come try to identify "some black lady." Jones followed the investigator but could not identify the woman, who was in a body bag. When Jones returned to the club, appellant immediately asked Jones what the sheriff's department wanted. Jones replied, "[T]hey wanted us to go out and see could we identify some black lady that got killed out on the highway." Although Jones did not say or know what highway or how the woman had died, appellant responded, "That's Sugar Junior's sister." The record shows that the victim's brother, Milburn Sanders Jr., was nicknamed Sugar Junior. Appellant left, went to Sanders's house, told Sanders that he saw police cars and ambulances at the store when he passed by earlier, and advised Sanders that he might need to call the sheriff's office "and see what's going on."

James H. Lister III testified that, on September 5 or 6, 1987, appellant brought a pistol to Lister and pawned it. The pistol "was either a .38 or a .357" according to Lister. Other testimony showed that the spent bullets recovered from the victim's body and from the scene were .38 caliber and were fired from a .38 caliber class of weapon, which includes a .357 Magnum.

The State also called three witnesses to whom appellant had made admissions. The first of these witnesses was Raymente Hutchison, a good friend of appellant's son. Hutchison testified that appellant had boasted over and over again that "he had gotten away with a robbery and murder." The second such witness was Lonnie Flowers, who testified that appellant admitted taking part in this offense after Flowers confronted him with information that Flowers had received from a third person indicating that appellant and Zane Hughes had stolen this person's pistol and killed the victim. According to Flowers, appellant told him that, when they went out to the store, they did not go to the store with the intent to kill anyone but that the "gun went off and we just had to go ahead and finish and do what we had to do."

Finally, the State called J.D. Luckie, who picked appellant up in Amarillo after the indictment was handed down in this case. Appellant asked Luckie why he was bringing him back to Midland. Luckie told him that it was for a capital murder. Appellant said, "You mean Verna Peace murder." During the trip, appellant continued to question the investigators about what they knew about the case and tried to convince them that he could not be convicted because there were no fingerprints, photos, or other evidence of that type. Luckie testified on rebuttal that appellant had confessed that he was involved in the victim's murder: "He said he sat up all night long trying to figure out what

4

offenses he had done that the Statute of Limitations hadn't run on yet, and he said Verna Peace was the only one he could think of."

Appellant testified and denied having any involvement in this offense. Appellant testified that he drove past the store before midnight and saw police cars. Appellant also testified that Flowers lied, that Luckie lied, that Lister lied, that Pennington lied, that Jones lied, and that Hutchison lied.

After reviewing all of the evidence in a neutral light, we cannot hold that the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or that the verdict is against the great weight and preponderance of the conflicting evidence. Appellant's second issue is overruled.

*Constitutionality of Punishment*

In the third issue, appellant asserts that the lack of a punishment hearing and the imposition of an automatic life sentence pursuant to TEX. CODE CRIM. PROC. ANN. art. 37.071 (Vernon 2006) violated his right to equal protection of the law. In the fourth issue, appellant contends that he was denied due process of law when he was denied a hearing on punishment. Similar arguments have been made and rejected by the courts of this State. *Laird v. State*, 933 S.W.2d 707, 714-15 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Prater v. State*, 903 S.W.2d 57, 60 (Tex. App.—Fort Worth 1995, no pet.). We agree with the reasoning and the authorities cited in *Laird* and *Prater*. Appellant's third and fourth issues are overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

January 30, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5