

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00287-CR

———————————————

RICKEY WAYNE EDWARDS, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1791140

Before Wallach and Walker, JJ.; and Lee Gabriel (Senior Justice,
Retired, Sitting by Assignment)
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

Rickey Wayne Edwards was charged in count one of a three-count indictment with capital murder of multiple persons with a deadly weapon, namely a firearm.[1] *See* Tex. Penal Code Ann. § 19.03(7)(A). He was charged in counts two and three with the murder of each of the two individuals alleged in count one. *See id.* § 19.02(b)(1). The jury found him guilty of capital murder as charged in count one. As required by Texas Penal Code Section 12.31(a)(2), the trial court assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice without the possibility of parole. In his first issue, Edwards contends that Section 12.31(a)(2), which automatically mandates life imprisonment without parole for a capital murder conviction, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. In his second issue, Edwards argues that Section 12.31(a)(2) constitutes a violation of the Texas Constitution's prohibition against cruel and unusual punishment in Article I, Section 13. While a review of the record reveals a clerical error that requires correction, we affirm as modified Edwards's judgment of conviction of capital murder.

---

[1]On September 17, 2020, the State provided notice that it would not seek the death penalty.

# I. BACKGROUND[2]

Portia Williams Edwards was Billy Williams's only daughter. Kameion Kitchen was one of Portia's sons and was the first grandson of Williams. Williams testified at trial about the murder of his daughter and grandson. Portia was married to Edwards for three to four years prior to her murder. Around 2:00 p.m. on May 3, 2020, Williams was on a break at his job when he received a phone call from his daughter. Williams testified that Portia sounded terrified and told him that Edwards had hit her and pulled a gun on her. When Williams told his daughter to call the police, he could hear Edwards's voice in the background asking Portia what her father had said. When Portia answered the question by telling Edwards that she was told to call the police, the phone went dead.

Jaimani Scott met Kitchen while they were both attending Sam Houston State University. They had been dating for about "a year and a half [to] two years" when Kitchen was murdered. Scott testified that Kitchen came to her residence on May 3, 2020, to "hang out" and that while he was there, she cut his hair. She explained that Kitchen's phone was behind him during the haircut, and he missed a call from his mother, Portia. Scott further explained to the jury that Kitchen loved his mother and that as soon as Scott pointed out to him that he had missed a call, he called Portia

---

[2]Edwards does not challenge the sufficiency of the State's evidence against him; therefore, we will dispense with a lengthy recitation of the factual background and confine our discussion to the facts only as needed for context and to resolve the issues raised.

back.  Scott described her impression that "[Portia] was frantic because of [Kitchen's] demeanor."  During his conversation with his mother, Kitchen told her that he was on his way.  Before he left, Kitchen told Scott that his mother had told him, "This man got a gun and said he was going to – you know, he's talking about killing her."  After Kitchen left her house, Scott never heard from him or saw him alive again.

Edwards called 911 at 3:57 p.m. on May 3, 2020, and asked that homicide detectives be sent to his home.  He explained that there was not a domestic "disturbance" but instead a homicide.  When asked what his emergency was, he stated, "There's no emergency now."  Edwards did not dispute that he had shot and killed his wife and her son, but he claimed self-defense.

Edwards was represented by counsel for the time period in which the case was pending.  On August 22, 2023, counsel filed a motion to declare Texas Penal Code Section 12.31(a)(2) unconstitutional pursuant to the Fifth, Sixth, Eighth, and Fourteenth amendments of the United States Constitution and Article I, Section 13 of the Texas Constitution.  The court considered this motion at a pre-trial hearing, and it denied the motion.  On the day before trial was set, Edwards informed the court that he wished to proceed pro se.  The court spent time trying to talk to Edwards and to illustrate to him the serious disadvantages of that position, but Edwards insisted.  Trial was then postponed to give Edwards time to review discovery.

Three weeks later, trial began.  Edwards represented himself at trial with two standby counsel.  The jury rejected his self-defense argument and found him guilty of

4

capital murder. The trial court imposed the mandatory sentence of life without the possibility of parole. *See id.* § 12.31(a)(2). Edwards appealed and appellate counsel was appointed.[3]

---

[3]The first order for appointment of counsel for appeal reflected that Edwards was proceeding on appeal pro se. Edwards sent a letter to this court less than two weeks later stating he did not wish to proceed pro se but instead asked for a court-appointed attorney. An attorney was appointed. On June 6, 2024, Edwards sent further correspondence to this court complaining of appellate counsel's failure to communicate and a "[c]onflict of [i]nterest" due to a professional relationship he alleged between appellate counsel and one of his standby counsel. This court ordered the case abated to the trial court to conduct a hearing to determine whether new appellate counsel should be appointed. That hearing was held on July 18, 2024. The trial court heard from appellate counsel, the State's attorney, and Edwards. At the conclusion of the hearing, the trial court concluded that "Mr. Edwards is never going to be satisfied with any lawyer that might be representing him on his behalf, and [appellate counsel], did, in fact, file a brief on his behalf." The trial court also explicitly found that there was "no conflict of interest." The trial court did not appoint another attorney. On July 24, 2024, Edwards sent a letter to this court stating his position on the abatement hearing and the trial court's ruling. In this letter, he made a multitude of different and conflicting requests including a rehearing on the issue decided at the abatement hearing; the appointment of new counsel for the abatement rehearing; to allow him to proceed pro se; and that this court "[r]emand or [a]bate this [case] to a different Court of Appeals." All relief requested in Edwards's letters of June 6, 2024, and July 24, 2024, is hereby denied.

## II. CONSTITUTIONAL CHALLENGES TO STATUTORY LIFE WITHOUT PAROLE[4]

### A. United States Constitution

Edwards's counsel argues that the life sentence imposed by Section 12.31(a)(2) of the Texas Penal Code violates his right to an individualized sentence under the Eighth Amendment because it denies him the right to present mitigating evidence at a sentencing hearing. U.S. Const. amend. VIII. We review the facial constitutionality of a criminal statute de novo. *Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015). We presume the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

It is true that the issues raised are direct challenges of well-settled law. The United States Supreme Court has concluded that a mandatory life sentence without parole does not violate the Eighth Amendment. *See Harmelin v. Michigan*, 501 U.S. 957, 994–96, 111 S. Ct. 2680, 2701–02 (1991). The holding in *Harmelin*—that the Eighth Amendment does not guarantee adult defendants an individualized punishment hearing when sentenced to life in prison without the possibility of parole for capital murder—is controlling. *Id.* Edwards's counsel asks this court to deviate from the

---

[4]Edwards's appellate counsel candidly acknowledges that both constitutional challenges to the current Texas law on the mandatory sentence of life without parole for capital murder have been firmly settled contrary to his position for years. He maintains his position, arguing that "[t]he issue is presented here to preserve it for a reversal, change, or modification in the law."

well-settled law and "evolve" by expanding the guidance suggested in *Miller v. Alabama* for juvenile offenders to adult offenders. 567 U.S. 460, 132 S. Ct. 2455 (2012). In *Miller*, the United States Supreme Court found that there was a distinction from *Harmelin* for juveniles; the Court, however, did not overrule any part of its opinion in *Harmelin*. *Id.* at 481, 132 S. Ct. at 2470.

We decline to deviate from the settled case law that Section 12.31(a)(2) does not violate the Eighth Amendment of the United States Constitution for adult offenders. *See Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.—Fort Worth 2004) (op. on reh'g), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *Buhl v. State*, 960 S.W.2d 927, 935 (Tex. App.—Waco 1998, pet. ref'd.); *Laird v. State*, 933 S.W.2d 707, 714–15 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Prater v. State*, 903 S.W.2d 57, 59 (Tex. App.—Fort Worth 1995, no pet.). We overrule issue one.

### B. Texas Constitution

"Texas courts have consistently held that the life sentence required under [S]ection 12.31(a) of the Penal Code . . . is not unconstitutional as cruel and unusual punishment under . . . Article I, [S]ection 13 of the Texas Constitution." *Cienfuegos v. State*, 113 S.W.3d 481, 495 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see Laird*, 933 S.W.2d at 714; *Prater*, 903 S.W.2d at 59–60. Edwards's counsel advocates for his client by arguing that state law can provide greater protection than federal constitutional law. Again, he proposes that this court take the reasoning from *Miller*

and apply it to the Texas Constitution. While this is a valid argument, we again decline to take the road not traveled and hold that the life sentence required under Section 12.31(a)(2) does not constitute cruel or unusual punishment under Article I, Section 13 of the Texas Constitution. We overrule issue two.

## III. ERROR IN JUDGMENT

A review of the record unambiguously establishes that there is a clerical error in Edwards's judgment for capital murder of multiple persons. The judgment states that Edwards pled guilty to the offense. The record reflects that Edwards verbally pled not guilty. "[A]n appellate court has authority to reform a judgment to . . . make [it] speak the truth" when the record provides the information necessary to do so. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see Graves v. State,* No. 02-23-00326-CR, 2024 WL 4002414, at *6 (Tex. App.—Fort Worth Aug. 30, 2024, pet. filed) (mem. op., not designated for publication) (modifying judgment to reflect that appellant pled not guilty when judgment erroneously recited guilty plea); *Lusk v. State*, No. 02-23-00094-CR, 2023 WL 8268034, at *1–2 (Tex. App.—Fort Worth Nov. 30, 2023, no pet.) (mem. op., not designated for publication) (modifying judgment sua sponte to reflect that appellant pled not true to allegations when judgment erroneously recited plea of true).

8

## IV.  CONCLUSION

Having overruled both of Edwards's issues, we modify the judgment to accurately reflect Edwards's not-guilty plea, and we affirm the judgment of the trial court as modified.

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 14, 2024

9